ORSON J. FERGUSON, Appellant, v. STEPHEN H. CRAWFORD, et al., Respondents.

A recital in a judgment roll in an action for foreclosure, that a defendant was served with process and appeared therein, is not conclusive and does not preclude such defendant, in an action brought by him to foreclose a junior mortgage, from showing that he was not in fact served and that he did not appear.

Nor is such defendant precluded by what purports to be an appearance on his behalf, signed by an attorney, attached to the roll, from showing that the paper was a forgery.

There is no distinction in these respects between the effect of domestic and foreign judgments, and the principle applies as well to the records of judgments of courts of general as of limited jurisdiction.

Under the system of practice established by the laws of this State the want of jurisdiction may always be set up against a judgment when sought to be enforced or when any benefit is claimed under it, and the bare recital of jurisdictional facts in the record of the judgment of any court is not conclusive, but only *prima facie* evidence, and may be disproved by extrinsic evidence.

*Ferguson* v. *Crawford* (7 Hun. 25) reversed.

*Brown* v. *Nichols* (42 N. Y., 26) and *Denton* v. *Noyes* (6 J. R., 296) distinguished.

The authorities of this and other States as to the conclusiveness of judgment records upon questions of jurisdiction, collated and discussed.

(Submitted March 19, 1877; decided September 18, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of defendants, entered upon a decision of the court, on trial at Special Term. (Reported below. 7 Hun, 25.)

The nature of the action and the facts are set forth sufficiently in the opinion.

*William F. Purdy*, for the appellant.

*Wilson Brown, Jr.*, for the respondents. The verity of a record cannot be questioned by parol evidence, or controverted or inquired into in a collateral action. (3 Thomas Coke on Lit., 323; *Brown* v. *Nichols*, 42 N. Y., 26; *Denton* v. *Noyes*, 6 J. R., 296; *Hamilton* v. *Wright*, 37 N. Y., 502; *Ray* v. *Rowley*, 4 N. Y. S. C., 43.)

RAPALLO, J. This action was brought to foreclose a mortgage, held by the plaintiff, on certain real estate in the county of Westchester. One of the defences was, that the rights of the plaintiff, as mortgagee, had been barred by a judgment of foreclosure of a mortgage prior to his, in favor of one McFarquahar, covering the same premises, under which judgment the premises had been sold to the defendant

Horton.   It was alleged in the answer that the plaintiff was a defendant in the McFarquahar action, in which the judgment had been rendered, and appeared therein, by John W. Mills, as his attorney, but did not put in any answer.

On the trial of the present action, the defendants, in support of this defence, put in evidence the judgment-roll in the last-mentioned action, which roll contained a notice of appearance for the present plaintiff, and a consent that judgment be entered, purporting to be signed by Mills.   The judgment was entered by default for want of an answer, and on this consent, and recited that the summons had been served on the defendants therein, and that none of them had appeared, except the present plaintiff, by John W. Mills, his attorney, and some others named in the judgment.

Thereupon the plaintiff called Mills as a witness, and offered to prove by him, 1st. That the signature to the notice of appearance and consent was a forgery; 2d. That Mills was never authorized to appear for the plaintiff; and 3d. That he never did appear for him.

No proof of service of the summons on the plaintiff is attached to or contained in that judgment-roll, and it appears to be conceded on the present argument, as matter of fact, that no such service was made.   The defendants rely wholly upon the effect of the recital in the judgment and the notice of appearance contained in the judgment-roll, and claim that in a collateral action these import absolute verity and cannot be contradicted by extrinsic evidence.

They also claim that the case of *Brown* v. *Nichols* (42 N. Y., 26) is decisive of this case.   There a judgment had been recovered against a defendant who had not been served with process, but for whom an attorney had appeared without authority, and it was held by this court that the judgment could not be attacked on that ground for want of jurisdiction in a collateral proceeding.

That decision does not reach the present case.   It is not founded upon any doctrine which precludes a party from showing, as matter of fact, that he was never brought before

the court, or appeared in it, but is based upon a long line of authority, which holds that when an attorney of the court appears for a party his appearance is recognized and his authority will be presumed to the extent, at least, of giving validity to the proceeding. That he is an officer of the court, amenable to it for misconduct, and to any party for whom he assumes to act without authority, for all damages occasioned by such action, and for reasons of public policy the court holds the appearance good, leaving the aggrieved party to his action for damages against the attorney, granting relief against the judgment, only in a direct application, and in case the attorney is shown to be irresponsible. (*Denton* v. *Noyes*, 6 Johns., 296.) This, however, is an entirely different case. The offer was not merely to show that the attorney was not authorized to appear, but that he did not in fact appear, and that the pretended appearance was a forgery.

None of the principles upon which the decisions in *Denton* v. *Noyes*, and *Brown* v. *Nichols* rest, can be applied to such a case. There is no act of any officer of the court which public policy requires should be recognized. There is no party against whom the innocent defendant can have redress. He is sought to be held bound by a judgment when he was never personally summoned or had notice of the proceeding, which result has been frequently declared to be contrary to the first principles of justice, and this is sought to be accomplished by means of a judgment entered upon forged papers. No principle of public policy requires or sanctions sustaining such a judgment. The only difficulty in the case arises upon the objection that the evidence offered tends to contradict the record, and from the adjudications which attach to the judgment of a court of general jurisdiction, a conclusive presumption of jurisdiction over the parties, which cannot be contradicted except by matter appearing on the face of the record itself.

It is an elementary principle recognized in all the cases that, to give binding effect to a judgment of any court, whether of general or limited jurisdiction, it is essential that

the court should have jurisdiction of the person as well as the subject-matter, and that the want of jurisdiction over either may always be set up against a judgment when sought to be enforced, or any benefit is claimed under it. There is no difference of opinion as to this general rule, but the point of difficulty is as to the manner in which this want of jurisdiction must be made to appear, in the case of a judgment of a domestic court of general jurisdiction, acting in the exercise of its general powers, when it comes in question in a collateral action: Whether, when the record is silent as to the steps taken to bring the parties into court, it may be proved by evidence that they were not legally summoned and did not appear; or whether, when the record recites that they were summoned or appeared, such recitals may be contradicted by extrinsic evidence; or whether the jurisdiction over the person and subject-matter is a presumption of law, which cannot be contradicted, unless it appears on the face of the record itself that there was a want of such jurisdiction, as in cases where the record shows that the service of process was by publication or some other method than personal.

On these points there has been as much diversity of opinion, especially between the courts of this State and those of other States, as upon any general question which can be mentioned, although there has as yet been no authoritative adjudication in this State on the subject. It is well settled by our own decisions, that in the case of a judgment of a court of general jurisdiction of a sister State, although it is entitled to the benefit of the presumption of jurisdiction which exists in favor of a judgment of one of our own courts, yet the want of jurisdiction may be shown by extrinsic evidence, and that even a recital in the judgment record that the defendant was served with process, or appeared by attorney, or of any other jurisdictional fact, is not conclusive, but may be contradicted by extrinsic evidence. (*Borden* v. *Fitch*, 15 John., 121; *Starbuck* v. *Murray*, 5 Wen., 148; *Shumway* v. *Stillman*, 6 Wen., 447; *Kerr* v. *Kerr*, 41 N. Y., 272; *Hoffman* v. *Hoffman*, 46 N. Y., 30.)

And the same rule prevails in some of the other States in regard to the judgments of courts of sister States. Although some have held, even in regard to such a judgment, that if the record contains recitals showing jurisdiction, they cannot be contradicted. (*Field* v. *Gibbs*, 1 Peters, C. C. R., 155; *Roberts* v. *Caldwell*, 5 Dana, 512; *Ewer* v. *Coffin*, 1 Cushing, 23; 1 R. I., 73; *Shelton* v. *Tiffin*, 6 How. [U. S]., 186.)

After considerable research, I have been unable to find a single authoritative adjudication, in this or any other State, deciding that in the case of a domestic judgment of a court of general jurisdiction, want of jurisdiction over the person may be shown by extrinsic evidence, while there are a great number of adjudications in neighboring States, holding that, in the case of such judgments, parties and privies are estopped in collateral actions to deny the jurisdiction of the court over the person as well as the subject-matter, unless it appear on the face of the record that the court had not acquired jurisdiction; and that in such cases there is a conclusive presumption of law that jurisdiction was acquired by service of process or the appearance of the party. The cases are very numerous, but the citation of a few of them will suffice.

In *Cook* v. *Darling* (18 Pick., 393), in an action of debt on a domestic judgment, the defendant pleaded that, at the time of the supposed service upon him of the writ in the original action, he was not an inhabitant of the State of Massachusetts; that he had no notice of the action, and did not appear therein.

This plea was held bad on demurrer, on the ground that the judgment could not be impeached collaterally. In *Granger* v. *Clarke* (22 Maine, 128), also an action on a judgment, the plea was the same, with the addition that the judgment had been obtained by fraud; but it was held to constitute no defence. *Coit* v. *Haven* (30 Conn., 190) was a *scire facias* on a judgment, and the defendant pleaded that the writ in the original action was never served upon him, etc.; and the

court held, in an elaborate opinion, that a judgment of a domestic court of general jurisdiction could not be attacked collaterally, unless the want of jurisdiction appeared upon the face of the record, and that jurisdictional facts, such as the service of the writ and the like, were conclusively presumed in favor of such a judgment, unless the record showed the contrary, although this rule did not apply to foreign judgments, or judgments of the courts of sister States, or to domestic judgments of inferior courts, and that the only remedy in such a case was by writ of error or application to a court of equity.

The same rule is held in *Penobscot. R. R. Co.* v. *Weeks* (52 Maine, 456); *Wingate* v. *Haywood* (40 N. H., 437); *Clark* v. *Bryan* (16 Md., 171); *Callen* v. *Ellison* (13 Ohio St. R., 446); *Horner* v. *Doe* (1 Ind., 131); *Wright* v. *Marsh* 2 Iowa, 94), and *Pierce* v. *Griffin* (16 Iowa, 552), and in numerous other cases which are referred to in the case of *Hahn* v. *Kelly* (34 Cal., 291), which adopts the same rule and contains a full and instructive discussion of the question.

There are many cases in other States, and in the courts of the United States, containing expressions general in their character, which would seem to sanction the doctrine that a want of jurisdiction over the person or subject-matter may in all cases be shown by extrinsic evidence, and they are sometimes cited as authorities to that effect. (*Elliott* v. *Piersol*, 1 Peters, 340; *Hollingsworth* v. *Barbour*, 4 Peters, 466; *Hickey* v. *Stewart*, 3 How. [U. S.], 750; *Shriver* v. *Lynn*, 2 How. [U. S.], 43; *Williamson* v. *Berry*, 8 How., 495; *Same* v. *Ball*, 8 How., 495; *Girvin* v. *McCowell*, 8 Sm. & M., 351; *Enos* v. *Smith*, 7 Sm. & M., 85; *Campbell* v. *Brown*, 6 How. [Miss.], 106; *Schafer* v. *Gates*, 2 B. Monroe, 453; *Wilcox* v. *Jackson*, 13 Peters, 498; *Miller* v. *Ewing*, 8 Sm. & M., 421, and numerous other cases not cited.) But an examination of these cases discloses that they all relate either to judgments of inferior courts, or courts of limited jurisdiction, or courts of general jurisdiction acting in the exercise of special statutory powers, which proceedings stand on the

same footing with those of courts of limited and inferior jurisdiction (3 N. Y., 511), or courts of sister States, or to cases where the want of jurisdiction appeared on the face of the record, or to cases of direct proceedings to reverse or set aside the judgment. I have not found one which adjudicated the point now under consideration, otherwise than those to which I have referred. There are some cases which hold that the want of authority of an attorney to appear may be shown by extrinsic evidence, although the record states that an attorney appeared for the party, but those are placed expressly on the ground that such evidence does not contradict the record. (*Bodurtha* v. *Goodrich*, 3 Gray, 508; *Shelton* v. *Tiffin*, 6 How. [U. S.], 186; 14 How., 340). Those cases are, however, in conflict with the decision of this court, in *Brown* v. *Nichols* (42 N. Y., 26), and in many other cases.

The learned annotators of Smiths' Leading Cases, *Hare & Wallace* (1 Sm. L. Cases, vol. 1, p. 842 [marg].) sum the matter up by saying : " Whatever the rule may be where the record is silent, it would seem clearly and conclusively established by a weight of authority too great for opposition, unless on the ground of local and peculiar law, that no one can contradict that which the record actually avers, and that a recital of notice or appearance, or a return of service by the sheriff in the record of a domestic court of general jurisdiction, is absolutely conclusive and cannot be disproved by extrinsic evidence."

It is quite remarkable, however, that notwithstanding the formidable array of authority in its favor, the courts of this State have never sustained this doctrine by any adjudication, but on the contrary the great weight of judicial opinion, and the views of some of our most distinguished jurists, are directly opposed to it.

As has been already stated, our courts have settled by adjudication in regard to judgments of sister States, that the question of jurisdiction may be inquired into, and a want of jurisdiction over the person shown by evidence,

and have further decided (in opposition to the holding of
courts of some of the other States) that this may be done,
even if it involves the contradiction of a recital in the judg-
ment record. In stating the reasons for this conclusion, our
courts have founded it on general principles, quite as applic-
able to domestic judgments as to others, and save in one
case (*Kerr* v. *Kerr*, 41 N. Y., 272), have in their opinions
made no discrimination between them. (*Borden* v. *Fitch*,
15 Johns., 121; *Starbuck* v. *Murray*, 5 Wend., 148; *Noyes*
v. *Butler*, 6 Barb., 613, and cases cited.)

When we come to consider the effect of these authorities,
it is difficult to find any solid ground upon which to rest
a distinction between domestic judgments and judgments
of sister States in regard to this question, for under the pro-
visions of the Constitution of the United States, which
requires that full faith and credit shall be given in each
State to the public acts, records and judicial proceedings
of every other State, it is now well settled that when
a judgment of a court of a sister State is duly proved in
a court of this State, it is entitled here to all the effect to
which it is entitled in the courts of the State where ren-
dered. If conclusive there it is equally conclusive in all the
States of the Union; and whatever pleas would be good to
a suit therein in the State where rendered, and none others
can be pleaded in any court in the United States. (*Hampton*
v. *McConnel*, 3 Wheaton, 234; Story Com. on Cons., § 183;
*Mills* v. *Duryee*, 7 Cranch, 481.)

In holding, therefore, that a defense that the party was not
served and did not appear, although the record stated that
he did, was good, our courts must have held that such is
the law of this State and the common law, and consequently,
that in the absence of proof of any special law to the con-
trary in the State where the judgment was rendered, it must
be presumed to be also the law of that State. The judgments
of our courts can stand on no other logical basis. The dis-
tinction which is made in almost all the other States of the
Union between the effect of domestic judgments and judg-

ments of sister States, in regard to the conclusiveness of the presumption of jurisdiction over the person, is sought to be explained, by saying that in regard to domestic judgments the party aggrieved can obtain relief by application to the court in which the judgment was rendered, or by writ of error, whereas in the case of a judgment rendered against him in another State he would be obliged to go into a foreign jurisdiction for redress, which would be a manifestly inadequate protection; and therefore the Constitution may be construed so as to apply only where the persons affected by the judgment were within the operation of the proceeding. This explanation, however, does not remove the difficulty in making the distinction, for if there is a conclusive presumption that there was jurisdiction, that presumption must exist in one case as well as in the other. The question whether or not the party is estopped, cannot be made to depend upon the greater inconvenience of getting rid of the estoppel in one case than in another.

But aside from this observation as to the effect of the authorities, an examination of them shows that our courts did in fact proceed upon a ground common to both classes of judgments. The reasons are fully stated in the case of *Starbuck* v. *Murray* (5 Wend., 148). In that case, which was an action upon a Massachusetts judgment, the defendant pleaded that no process was served on him in the suit in which the judgment sued on was rendered, and that he never appeared therein in person or by attorney, and this plea was held good, notwithstanding that the record of the judgment stated that the defendant appeared to the suit. MARCY, J., in delivering the opinion of the court, and referring to the argument that the defendant was estopped from asserting anything against the allegation of his appearance contained in the record, says: "It appears to me that this proposition assumes the very fact to be established, which is the only question in issue. For what purpose does the defendant question the jurisdiction of the court? Solely to show that its proceedings and judgments are void, and therefore the supposed record is not

in truth a record. If the defendant had not proper notice of, and did not appear to, the original action, all the State courts, with one exception, agree in opinion that the paper introduced, as to him, is no record. But if he cannot show even against the pretended record that fact, on the alleged ground of the uncontrollable verity of the record, he is deprived of his defence by a process of reasoning that is to my mind little less than sophistry. The plaintiff in effect declares to the defendant—the paper declared on, is a record, because it says you appeared ; and you appeared, because the paper is a record. This is reasoning in a circle. The appearance makes the record uncontrollable verity, and the record makes the appearance an unimpeachable fact." And again, at p. 160, he says : " To say that the defendant may show the supposed record to be a nullity, by showing a want of jurisdiction in the court which made it, and at the same time to estop him from doing so because the court has inserted in the record an allegation which he offers to prove untrue, does not seem to me to be very consistent."

This is but an amplification of what is sometimes more briefly expressed in the books, that where the defence goes to defeat the record, there is no estoppel. That the reasoning of Marcy, J., is applicable to domestic judgments, is also the opinion of the learned annotators to Phillip's Evidence. (Cowen and Hill's notes [1st Ed.], p. 801, note 551.) Refering to the opinion of Marcy, J., before cited, they say: " The same may be said respecting any judgment, sentence or decree. A want of jurisdiction in the court pronouncing it may always be set up when it is sought to be enforced, or when any benefit is claimed under it; and the principle which ordinarily forbids the impeachment or contradiction of a record has no sort of application to the case." The dicta of our judges are all to the same effect, although the precise case does not seem to have arisen. In *Bigelow* v. *Stearns* (19 Johns., 41), Spencer, Ch. J., laid down the broad rule that if a court, whether of limited jurisdiction or not, undertakes to hold cognizance of a cause without having gained

jurisdiction of the person by having him before them in the manner required by law, the proceedings are void. In *Latham* v. *Edgerton* (9 Cow., 227), Sutherland, J., in regard to a judgment of a court of common pleas, says: The principle that a record cannot be impeached by pleading, is not applicable to a case like this. The want of jurisdiction is a matter that may always be set up against a judgment when sought to be enforced or where any benefit is claimed under it." Citing *Mills* v. *Martin* (19 Johns., 33). He also says (page 229): "The plaintiff below might have applied to the court to set aside their proceedings, but he was not bound to do so. He had a right to lie by until the judgment was set up against him, and then to show that the proceedings were void for want of jurisdiction. In *Davis* v. *Packard* (6 Wend., 327, 332), in the Court of Errors, the Chancellor, speaking of domestic judgments, says: " If the jurisdiction of the court is general or unlimited both as to parties and subject-matter, it will be presumed to have had jurisdiction of the cause unless it appears affirmatively from the record, *or by the showing of the party denying the jurisdiction of the court,* that some special circumstances existed to oust the court of its jurisdiction in that particular case." In *Bloom* v. *Burdick* (1 Hill, 130), Bronson, J., says: "The distinction between superior and inferior courts, is not of much importance in this particular case, for whenever it appears that there was a want of jurisdiction, the judgment will be void in whatever court it was rendered;" and in *People* v. *Cassels* (5 Hill, 164, 168), the same learned judge makes the remark, that no court or officer can acquire jurisdiction by the mere assertion of it, or by falsely alleging the existence of facts upon which jurisdiction depends. In *Harrington* v. *The People* (6 Barb., 607, 610) Paige, J., expresses the opinion that the jurisdiction of a court, whether of general or limited jurisdiction, may be inquired into, although the record of the judgment states facts giving it jurisdiction. He repeats the same view in *Noyes* v. *Butler* (6 Barb., 613, 617), and in *Hard* v. *Shipman,*

(6 Barb., 621, 623, 624), where he says of superior as well as inferior courts, that the record is never conclusive as to the recital of a jurisdictional fact, and the defendant is always at liberty to show a want of jurisdiction, although the record avers the contrary. If the court had no jurisdiction, it had no power to make a record, and the supposed record is not in truth a record. (Citing *Starbuck* v. *Murray*, 5. Wend., 158.) The language of GRIDLEY, J., in *Wright* v. *Douglass* (10 Barb., 97, 111), is still more in point. He observes : "It is denied by counsel for the plaintiff, that want of jurisdiction can be shown collaterally to defeat a judgment of a court of general jurisdisdiction. The true rule, however, is that laid down in the opinion just cited (op. of BRONSON, J., in *Bloom* v. *Burdick*, 1 Hill, 138 to 143), that in a court of general jurisdiction, it is to be presumed that the court has jurisdiction till the contrary appears, but the want of jurisdiction may always be shown *by evidence*, except in one solitary case," viz : "When jurisdiction depends on a fact that is litigated in a suit, and is adjudged in favor of the party who avers jurisdiction, then the question of jurisdiction is judicially decided, and the judgment record is conclusive evidence of jurisdiction until set aside or reversed by a direct proceeding."

The General Term, in that case, held that a judgment of the Supreme Court was void for want of service of an attachment, notwithstanding that the record averred that the attachment had been duly served and returned, according to law. The judgment in the case cited was reversed (7 N. Y., 564), but not upon the point referred to here. It cannot, however, be held to be an adjudication upon that point, because the judgment was not rendered in the exercise of the general powers of the court, but in pursuance of a special statutory authority.

In the *Chemung Canal Bank* v. *Judson* (8 N. Y., 254), the general principle is recognized, that the jurisdiction of any court exercising authority over a subject may be inquired into, and in *Adams* v. *The Saratoga & Washington R. R.*

*Co.* (10 N. Y., 328, 333), GRIDLEY, J., maintains as to the judgments of all courts, that jurisdiction may be inquired into, and disproved by evidence, notwithstanding recitals in the record, and says that such is the doctrine of the courts of this State, although it may be different in some of the other States, and perhaps also in England; and he says the idea is not to be tolerated, that the attorney could make up a record or decree, reciting that due notice was given to the defendant of a proceeding, when he never heard of it, and the decree held conclusive against an offer to show this vital allegation false. That was a case of a special proceeding, and, therefore, not an authority on the point. In *Pendleton* v. *Weed* (17 N. Y., 75), where a judgment of the Supreme Court was sought to be attacked collaterally, it is said by STRONG, J.: " It is undoubtedly true that the want of jurisdiction of the person is a good defence in answer to a judgment when set up for any purpose, *and that such jurisdiction is open for inquiry;*" and by COMSTOCK, J., at p. 77 : "I assent to the doctrine that where there is no suit or process, appearance or confession, no valid judgment can be rendered in any court; that in such a case *the recital in the record of jurisdictional facts is not conclusive.*" (Citing *Starbuck* v. *Murray.*)  " I think it is always the right of a party against whom a record is set up, to show that no jurisdiction of his person was acquired, and consequently that there was no right or authority to make up the record against him." SELDEN and PRATT, JJ., concurred in these views, but the case was disposed of on a different point.

In *Porter* v. *Bronson* (29 How. Pr., 292, and S. C., 19, Abb. Pr., 236), the Court of Common Pleas of the City of New York held, at General Term, that assuming the Marine Court to be a court of record, a defendant in an action on a judgment of that court might set up that he was not served with process and did not appear, notwithstanding recitals in the record showing jurisdiction; and in *Bolton* v. *Jacks* (6 Rob. 198), JONES, J., says that it is now conceded, at least in this State, that want of jurisdiction will render void

the judgment of any court, whether it be of superior or inferior, of general, limited or local jurisdiction, or of record or not, and that the bare recital of jurisdictional facts in the record of a judgment of any court, whether superior or inferior, of general or limited jurisdiction, is not conclusive, but only *prima facie* evidence of the truth of the fact recited, and the party against whom a judgment is offered, is not by the bare fact of such recitals estopped from showing, by affirmative proof, that they were untrue and thus rendering the judgment void for want of jurisdiction. He cites in support of this opinion, several of the cases which I have referred to, and *Dobson* v. *Pearce* (12 N. Y., 164), and *Hatcher* v. *Rocheleau* (18 N. Y., 92).

It thus appears that the current of judicial opinion in this State is very strong and uniform in favor of the proposition stated by JONES, J., in 6 Rob., 198, and if adopted here, is decisive of the present case. It has not as yet, however, been directly adjudicated, and if sustained, it must rest upon the local law of this State, as it finds no support in adjudications elsewhere. There are reasons, however, founded upon our system of practice, which would warrant us in so holding. The powers of a court of equity being vested in our courts of law, and equitable defences being allowable, there is no reason why, to an action upon a judgment, the defendant should not be permitted to set up, by way of defense, any matter which would be ground of relief in equity against the judgment; and it is conceded in those States where the record is held conclusive, that when the judgment has been obtained by fraud, or without bringing the defendant into court, and the want of jurisdiction does not appear upon the face of the record, relief may be obtained in equity.

The technical difficulty arising from the conclusiveness of the record is thus obviated. In the present case, the judgment is set up by the defendants as a bar to the plaintiff's action. But it must be borne in mind, that this is an equitable action, being for the foreclosure of a mortgage. The

defendants set up the foreclosure in the McFarquahar case as a bar, but being in a court of equity, the plaintiff had a right to set up any matter showing that the defendants ought not in equity to avail themselves of that judgment. They offered to show that it was entered *ex parte* on forged papers. It does not appear that the plaintiff ever had any knowledge of it, and it is not pretended that he was legally summoned. Such a judgment would never be upheld in equity, even in favor of one ignorant of the fraud and claiming *bona fide* under it. He stands in no better position than any other party claiming *bona fide* under a forged instrument.

The case is analogous in principle to that of the *Bridgeport Savings Bank* v. *Eldredge* (28 Conn., 557). That was a bill filed by a second mortgagee to redeem mortgaged premises from a first mortgagee. The first mortgagee had obtained a decree of foreclosure against the second mortgagee, and the time limited for redemption had expired. The record of the decree found the fact that legal service of the bill in the first suit had been made on the second mortgagee, but in fact none had been made, and he had no actual knowledge of the pendency of the suit until after the time limited for redemption had expired; and he would have redeemed if he had known of the decree.

It was held, 1. That the decree was not in any proper sense a bar to the present suit, as a judgment at law would be a bar to a suit at law; but that, without impugning the decree, the court could, for equitable reasons shown, allow a further time for redemption.

2. That, therefore, the question whether the plaintiff could contradict the record by showing that no service of the bill was, in fact, made upon him, did not present itself as a technical one, to be determined by the rules with regard to the verity of judicial records, but only in its relation to the plaintiff's rights to equitable relief, and therefore that evidence of want of notice was admissible.

The bill to redeem was not framed to open the former

decree, and contained no allegations adapted to or praying for such relief, but was in the ordinary form of a bill for redemption, taking no notice of the previous decree. The decree was set up in the answer, and it was averred that it was rendered on legal notice to the plaintiff. The court, however, held that this defence might be rebutted by evidence of facts which should preclude defendants from taking advantage of a decree of which they could not conscientiously avail themselves.

Under the system of practice in this State, no reply to an answer setting up new matter is required, but the plaintiff is allowed to rebut it by evidence. Neither is it necessary to anticipate a defence arising upon a deed or record by inserting matter in the complaint in avoidance of it. The defence may never be set up, and the plaintiff is not bound to suppose that it will be. The state of the pleadings, therefore, presents no difficulty. The only question which might be raised is, that McFarquahar, in whose name the decree was obtained, should be before the court, but no such objection was made at the trial, and if it had been, I do not see that he has any interest in the question. All the parties claiming under the decree and sale are parties to this action, and I see no reason why the validity of the McFarquahar foreclosure cannot be tried herein as well as upon a motion or in a separate suit to set aside the decree.

The judgment should be reversed, and a new trial ordered with costs to abide the event.

All concur; ANDREWS, J., in result.

Judgment reversed.