HARRIET H. VILAS et al., Administrators, etc., Respondents, *v.* THE PLATTSBURGH AND MONTREAL RAILROAD COMPANY et al., GEORGE B. CHASE, Appellant.

Relief from a judgment rendered against a party upon the unauthorized appearance of an attorney in his name, in the absence of special circumstances necessitating a resort to a court of equity, may be sought only by motion in the action in which the unauthorized appearance was entered.

*Shelton* v. *Tiffin* (6 How. U. S. 163); *Harshay* v. *Blackman* (20 Ia. 161); *Wiley* v. *Pratt* (23 Ind. 628), distinguished.

Where, upon such a motion, it appeared without dispute that the moving party was neither served with process in the action, nor authorized the attorney who put in an appearance in his name to appear for him, or had any notice of such an appearance until after the rendition of the judgment against him, *held*, that an order denying the motion and remitting the moving party to a remedy by action was error.

It appeared that the attorney upon whose unauthorized appearance the judgment was rendered, was dead, and that at the time of his death his estate was entirely inadequate to pay the judgment rendered against the moving party.  *Held*, that the latter was entitled to apply for and obtain relief by the vacation of the judgment; and that the fact that the attorney, at the time the judgment was rendered, was of sufficient pecuniary ability to respond in damages for the amount of the judgment was not controlling to prevent such relief, it not appearing that the rights of the party obtaining the judgment had been changed to his prejudice.

It appeared also that the judgment was rendered against the moving party and two others jointly; which judgment, upon the appeal of such other parties to this court, was reversed as to them.  *Held*, that the plaintiff had no equity entitling him to claim that the moving party should have been prompt to pursue and obtain a remedy by action against the attorney: as, even if the estate of the attorney was solvent, and if the judgment entered upon the order of reversal was not technically an estoppel of record, because he was not a party to the appeal, the judgment of reversal furnished good grounds for granting the moving party absolute and final relief.

The rule that in the case of a strictly domestic judgment a party not served, but for whom an unauthorized appearance was entered by an attorney, may not on these grounds assail the judgment, for want of jurisdiction, when it comes in question collaterally, does not apply where the party was at all times a non-resident and out of the jurisdiction, the court may, on motion in the action, grant relief either by setting aside the judgment or by staying procedings and permitting the party to come in and defend.

*It seems* that while said rule is, in cases where it is strictly applicable, *stare decisis*, it will not be extended to cases fairly and reasonably distinguishable.

The judgment in question was rendered in 1880; soon after the plaintiff was apprised that C., the moving party, had not been served in the action, and that the appearance of the attorney was unauthorized.  In 1881 plaintiff brought an action upon the judgment against C. in Massachusetts, where he resided, which was his first knowledge of the unauthorized appearance or of the judgment against him.  C. answered, alleging that the New York court never acquired jurisdiction of his

person or property so as to render valid a judgment against him. After the lapse of about two years, during which time defendant had been urging the case for trial, upon plaintiff's application a nonsuit was granted. After the reversal as to the other defendants and entry of judgment thereon, which was in 1887, plaintiff assigned the judgment against C., the assignee having full notice of C.'s equities. The motion to vacate was made in 1888. It did not appear that the delay of C. in making the motion had changed the situation of the plaintiff or the assignee to the prejudice of either. *Held*, that a denial of the motion upon the ground of *laches* was error; that such a plea could not be listened to to uphold a judgment, which, on the appeal of the co-defendants of C.; standing in the same position with him, has been decided to have no legal foundation.

(Argued October 6, 1890; decided December 2, 1890.)

THESE are appeals from orders of the General Term of the Supreme Court in the third judicial department, made February 4, 1890, which affirmed orders of the Special Term denying motions to vacate a judgment of the Special Term in this action against defendant George B. Chase for the sum of $52,803.73, rendered June 4, 1880, and also the judgment of the General Term affirming said judgment, rendered July 21, 1883, and to set aside and vacate an appearance in said action for said Chase by John N. Whiting, as his attorney therein.

One motion was made by Chase to vacate the judgments on the ground that the appearance by Whiting was unauthorized. The other motion was made by the sole executrix, devisee and legatee of John N. Whiting, now deceased, to permit the appearance by him to be withdrawn, and also to set aside and vacate the judgment on the ground that his appearance was made upon the representation of John B. Page, one of the defendants, that he was authorized by Chase to employ an attorney to appear for him, and that the appearance was made in good faith, although without actual authority.

The action was commenced June 24, 1875. The defendant Chase was, at the time, and has ever since been a non-resident of this state, and was never served with process in the action, nor was any jurisdiction ever acquired over him therein, unless by virtue of the appearance of Whiting.

The facts upon which the action was based are very complicated. They are set forth in the report of the case, on appeal to this court, in 106 N. Y. 440. In general terms, it may be stated that the action was brought to enforce an alleged lien, in favor of Samuel F. Vilas, upon the railroad, rolling stock and property formerly of the Plattsburgh and Montreal Railroad Company, but which had become vested in the Delaware and Hudson Canal Company as lessee under a perpetual lease. The several corporations, which from time to time had succeeded to the rights, property and franchises of the Plattsburgh and Montreal Railroad Company, were made defendants in the action, as were three individuals, viz.: John B. Page, Peter Butler, George B. Chase. The individual defendants were joined as parties upon the theory that in certain dealings between themselves and parties interested in the property upon which the lien was claimed, they had bound themselves to pay the lien debt, in case the lien should be established, which obligation inured, as was claimed by Vilas, to his benefit, and was enforceable in his favor, although he was not a party to the transaction.

Briefly stated, the transaction relied upon to establish the personal liability of the individual defendants was this: Page, Butler and Chase, on the 13th of September, 1867, after the foreclosure and sale of the Plattsburgh and Montreal Railroad and the purchase thereof by the first mortgage bondholders, but before a conveyance had been made pursuant thereto, entered into an agreement with the holders of the bonds by which they became the owners thereof and substituted to the rights of the original bondholders, and which agreement provided for the organization of a new corporation to which the property should be conveyed. The judgment in the foreclosure suit left open the question as to the title of Vilas to certain rolling stock of the Plattsburgh and Montreal Railroad Company, which he claimed under an execution sale, and that question, although in litigation in the foreclosure action, was undecided when the agreement of September 13, 1867, was made. If Vilas should establish his title in the foreclosure

action, then, by an arrangement, made as early as 1858, between the parties to the foreclosure and the receiver, Vilas was to have a lien on the property for an amount fixed, with interest, representing the value of rolling stock purchased by him, which was in the possession of the receiver. In view of this contingency, the agreement of September 13, 1867, provided: "The purchasers (Page, Butler and Chase) are to assume the prosecution of that suit (the Vilas litigation in the foreclosure action) and to abide its result and judgment, and if there should be any recovery in said Vilas' favor, the purchasers agree to indemnify the said parties of the first part and said Platt, as receiver, against the same." The Vilas branch of the foreclosure suit was finally determined in his favor in 1873, and his title was sustained (54 N. Y. 314), but no personal liability was adjudged against the receiver or the vendors of the bonds. It was mainly upon this clause in the agreement that Vilas relied in the present action to sustain the contention that the individual defendants were personally liable for his debt.

The plaintiff, on the trial of the present action at Special Term, had judgment in his favor establishing his debt at the amount of $52,803.73, and adjudging that the individual defendants were, as between themselves and the corporate defendants, primarily liable therefor, and judgment was rendered against them for that amount, with a subsidiary judgment subjecting the railroad and property of the Plattsburgh and Montreal Railroad Company in the possession of the defendant, the Delaware and Hudson Canal Company, to a lien for the same debt. The General Term having affirmed this judgment, an appeal was taken therefrom by all the defendants, except Chase, to this court, and here the judgment was reversed as to the defendants Page and Butler, and affirmed as to the corporation defendants. The substance of the decision was that the individual defendants had incurred no personal liability, but that the property was chargeable with a lien for the debt due to Vilas. Chase, not having appealed to this court, the judgments of the Special and Gen-

eral Terms, as against him, stood in form unreversed, charging him with a very large indebtedness, from which the other individual defendants, standing under the same liability and no other, had been relieved.

The moving papers show (1) that when the action was commenced, Chase resided in Massachusetts and was, and ever since has been a non-resident of this state; (2) that he was never served with process in the action, and had no knowledge or information whatever as to the existence of the action, or of any judgment against him until February, 1881, when an action on the judgment of the Special Term, rendered June 4, 1880, was brought oy Viias against him in the courts of Massachusetts; (3) that he never directly or indirectly authorized Whiting to appear for him in the action; he neither knew Whiting, nor had ever seen or heard of him prior to the commencement of the suit in Massachusetts, nor did he give any authority to Page to employ an attorney to appear for him.

The explanation of the conduct of Whiting is furnished in the affidavits. He was employed by Page to defend the action, and entered his appearance for Chase by his direction, believing him to have authority to act for his co-defendants. The affidavits show that the relations between Page and Chase were at that time very hostile, and so continued.

Relief was denied by the Special and General Terms merely on the ground of *laches* on the part of Chase in making the application.

The following is a brief statement of the facts presented bearing upon the point of *laches:* As has been stated, the first notice or knowlêdge Chase had of the suit was in February, 1881, when the action on the judgment was commenced in Massachusetts. He immediately employed an attorney who went to New York and saw Whiting, who informed him of the circumstances under which he had appeared for Chase. At this time the case had been appealed by Whiting to the General Term in the name of all the individual defendants, and the appeal was then pending. The agent of Chase

informed Whiting that Chase had never authorized an appearance for him in the action, and notified Whiting that Chase gave him no authority to prosecute the appeal to the General Term taken in his name, and that if he went on with it he would do so without authority from Chase. Chase put in an answer in the Massachusetts suit which, among other things, averred that the New York court never had or acquired jurisdiction of his person or property so as to render a valid judgment against him. The case stood for trial for about the period of two years, the defendant meanwhile urging it on, when the plaintiff applied to be nonsuited, and a nonsuit was granted. The affidavit of Mr. Dabney, the attorney for Chase in the Massachusetts suit, states the attorneys for the plaintiff in that case understood that the defense was that Chase had not been served, and that Whiting's appearance for him was unauthorized, and that the attorneys for Vilas informed him that they were nonsuited because they could not induce Page to go to Boston to testify in that case, and there is no denial of these facts. In 1883, after the judgment of the Special Term in this action had been affirmed by the General Term, Mr. Whiting wrote to Chase, asking him if he desired an appeal on his behalf to be taken to the Court of Appeals, and Chase replied that he did not recognize the right or authority of Mr. Whiting to appear for him in the action, and, therefore, did not wish any appeal to be taken for him. The moving affidavits charge, upon facts stated in connection therewith, that both Vilas and the Delaware and Hudson Canal Company were informed, soon after the judgment was rendered at Special Term, that Chase claimed that he was never served, nor authorized any appearance in the action, and the opposing affidavits make no averment or denial on the subject. The judgment of the Court of Appeals was rendered in October, 1887. Subsequently the Delaware and Hudson Canal Company, the lessee of the property charged with the lien, paid the amount thereof and took from the plaintiffs an assignment of the judgment against Chase "upon the assumption," as stated in the affidavit of their attorney, " that it might recover

back (the amount paid) from George B. Chase under the judgment of the General Term." It appears that both Page and Whiting died in 1885. Page was insolvent, and the estate of Whiting was insufficient to respond in damages to the amount of the judgment against Chase. This proceeding was commenced in January, 1888. The General Term, in its opinion, state that " in view of the *laches* of Chase and of the death of Page and Whiting, Chase should not have this remedy by special motion, but should be left to his action, in which he can be cross-examined should he testify."

Other facts are stated in the opinion.

*Peter B. Olney* for appellant. The court below erred in holding that the remedy of Chase was not by a motion or direct application, in the action in which the unauthorized appearance was put in, to set aside said appearance and vacate the proceedings had by reason thereof, but by a separate action to set aside the judgment. (*Brown* v. *Nichols*, 42 N. Y. 31; *Ellsworth* v. *Campbell*, 31 Barb. 135; *Blodget* v. *Conklin*, 9 How. Pr. 442; *Denton* v. *Noyes*, 6 Johns. 295; *Ferguson* v. *Crawford*, 70 N. Y. 256; *Sperry* v. *Reynolds*, 65 id. 183.) The failure of the court below to exercise its discretion, whether it arises from an erroneous opinion that it has no power in the premises, or by reason of any inadvertence or mistake, is an error of law, which this court has the power and the right to correct. (*H. F. Ins. Co.* v. *Tomlinson*, 58 N. Y. 216; *Jemison* v. *C. S. Bank*, 85 id. 549; *Huebler* v. *Bernharth*, 115 id. 459; *Lawrence* v. *Farley*, 73 id. 187; *Frederick* v. *Taylor*, 52 id. 596, 598; *Atty.-Genl.* v. *N. A. L. Ins. Co.*, 93 id. 389; *M. Bank* v. *P. Bank*, 102 id. 464.) This court has the power to, and should reverse the orders of the court below in the Chase motion, because Chase, as matter of right, is entitled to the relief he seeks. (*Borden* v. *Fitch*, 15 Johns. 121; *Starbuck* v. *Murray*, 5 Wend. 148; *Kerr* v. *Kerr*, 41 N. Y. 272; *Hoffman* v. *Hoffman*, 46 id. 30; *Kinnier* v. *Kinnier*, 45 id. 535; *Ferguson* v. *Crawford*, 70 id. 261; *Nordlinger* v. *DeMier*, 54 Hun,

276; *Hamilton* v. *Wright*, 37 N. Y. 502; *Brown* v. *Nichols*, 42 id. 26, 27; *Meacham* v. *Dudley*, 6 Wend. 515; *Graze-brook* v. *McCreedie*, 9 id. 437; *Ellsworth* v. *Campbell*, 31 Barb. 135; *Allen* v. *Stone*, 10 id. 547; *Bordutha* v. *Good-rich*, 3 Gray, 508; *Gilman* v. *Gilman*, 126 Mass. 26; *Wright* v. *Andrews*, 130 id. 149.) The denial of the court below of Chase's motion was an abuse of the powers and discretion conferred upon that court, and it is the right and duty of this court to correct such abuse. (106 N. Y. 465.) From the joint nature of the judgment and of the liability on which it was founded, when the Court of Appeals reversed the judgment on the appeal of two of the joint judgment-debtors, it follows both on principle and authority that the judgment is gone for every purpose; it no longer exists as against Chase or anyone else; and appellants are entitled for their protection to have the judgments canceled of record, and so marked on the docket of judgments. (*Harmon* v. *Brotherson*, 1 Den. 540; *Giraud* v. *Stagg*, 10 How. Pr. 373; *Hawk* v. *Bishop*, 10 Hun, 509; *Pollock* v. *Webster*, 16 id. 105; *Story* v. *N. Y. C. & H. R. R. R. Co.*, 6 N. Y. 86; *Arthur* v. *Griswold*, 55 id. 400; *McIntosh* v. *Ensign*, 23 id. 172; *Perry* v. *Chester*, 53 id. 242; *Brown* v. *Richardson*, 4 Robt. 604; *Clason* v. *Morris*, 10 Johns. 524; *Frow* v. *DeLa Vega*, 15 Wall. 552; *Wright* v. *Andrews*, 130 Mass. 140.) Mere delay to make the application herein cannot be held to be such *laches* on the part of Chase as to defeat these motions.. (*Granger* v. *Schwartz*, 11 N. Y. Leg. Obs. 346; *Johnson* v. *Bloomer*, 3 Edw. Ch. 328; Freeman on Judg. [3d ed.] § 427; *Waring* v. *Loder*, 53 N. Y. 581; *Blennerhassett* v. *Day*, 2 B. & B. 104; *Murray* v. *Palmer*, 3 S. & L. 487; 58 N. Y. 643; *Meacnam* v. *Dudley*, 6 Wend. 515; *Allen* v. *Stone*, 10 Barb. 547; *Shelton* v. *Tiffin*, 6 How. [U. S.] 163; *Bayley* v. *Buckland*, 1 W. H. & G. 1.) The Delaware and Hudson Canal Company have paid the full amount of the judgment to the plaintiffs. This payment has extinguished the judgment against Chase by operation of law. The receipt of this money by plaintiffs was a payment of the debt, and extinguished the judgment.

(*Waring* v. *Loder*, 53 N. Y. 581.) The court has an inherent right to exercise its power over its own judgments in aid of justice, and this power is not limited in matter of substance by the Code of Civil Procedure. (Code Civ. Pro. § 724; *Hatch* v. *C. N. Bank*, 78 N. Y. 490; *Barry* v. *Ins. Co.*, 53 id. 539; *In re Tilden*, 98 id. 444; *Vanderbilt* v. *Schreyer*, 81 id. 648; *Dinsmore* v. *Adams*, 66 id. 618; *Alling* v. *Fahey*, 70 id. 571.)

*Edwin Young* for respondents. This appeal will not lie as the order appealed from is based upon the discretion of the court below. (*Barry* v. *Ins. Co.*, 53 N. Y. 539; *Hatch* v. *C. N. Bank*, 78 id. 490; *Dinsmore* v. *Adams*, 5 Hun, 149; *Arthur* v. *Griswold*, 60 N. Y. 143, 146; *Van Slyke* v. *Hyatt*, 46 id. 259–264; *Whitney* v. *Townsend*, 67 id. 40; *Cushman* v. *Brundrett*, 50 id. 297; *Lake* v. *Gibson*, 2 id. 188.) The discretion of the court below was not so grossly abused as to warrant the interference of this court. (*Howell* v. *Mills*, 53 N. Y. 322; *Winter* v. *Eckert*, 93 id. 367; *Gleason* v. *Dodd*, 4 Metc. 333; *Gilman* v. *Gilman*, 126 Mass. 26; *Hall* v. *Williams*, 6 Pick. 232; 8 Mass. 273; 1 Cush. 23; 11 id. 279; *Jones* v. *Jones*, 108 N. Y. 415; *Richardson* v. *Trimble*, 17 Abb. [N. C.] 210.) Whether authorized or not, Whiting duly appeared for Chase, who was, therefore, properly party defendant, and the remedy of Chase is against Whiting if he sustains damages by reason of the unauthorized appearance. (Code Civ. Pro. §§ 55, 56, 57, 67–75, 421, 424, 1512, 1513; *A. Ins. Co.* v. *Oakley*, 9 Paige, 496; *Brown* v. *Nichols*, 42 N. Y. 30–32; *Hamilton* v. *Wright*, 37 id. 502; *Denton* v. *Noyes*, 6 Johns. 296; *Jackson* v. *Stewart*, Id. 34.) The judgment in question was a several and not joint liability. (1 Pars. on Cont. 37; *Peck* v. *Ellis*, 2 Johns. Ch. 139; *Wehle* v. *Haviland*, 42 How. Pr. 399; *Andrews* v. *Murray*, 33 Barb. 354.) The appellant has been guilty of such gross *laches* which has proved so prejudicial to the respondent that the court was not warranted in granting his application. (*Whitney* v. *Townsend*, 7 Hun, 233; 67 N. Y. 40; *Hayes* v. *Nourse*, 114 id. 595, 608; *Sullivan* v. *Miller*, 106 id. 635; *In re Deyo*,

102 id. 724; *In re Flushing Ave.*, 101 id. 679; *Frost* v. *Coon*, 30 id. 428.)

Andrews, J.   We understand that it has become the settled practice in this state that relief against a judgment rendered against a party upon the unauthorized appearance of an attorney in his name, is to be sought in a direct application to the court by motion in the action in which the unauthorized appearance was entered.   This was the remedy adopted in the leading case of *Denton* v. *Noyes* (6 Johns. 297), and in every subsequent case of a like character in this state which has come to our notice. (*Grazebrook* v. *M'Creedie*, 9 Wend. 437; *Adams* v. *Gilbert*, Id. 499; *Campbell* v. *Bristol*, 19 id. 101; *American Ins. Co.* v. *Oakley*, 9 Paige, 496; *Hamilton* v. *Wright*, 37 N. Y. 502.) In *Brown* v. *Nichols* (42 N. Y. 31), which was the case of a creditor's bill founded on a judgment rendered against the defendant's intestate, the defendant sought to impeach the judgment by proof that the defendant was not served with process, and that an appearance entered for him in the action by an attorney was unauthorized.   The court overruled the defense, holding that the authority of the attorney to appear could not be questioned collaterally, but pointed out the remedy, Earl, J., saying, "I think a party should always seek relief for an unauthorized appearance in the suit in which it has been put in, where the rights and equities of all parties can be best protected."   In *Ferguson* v. *Crawford* (70 N. Y. 256), Rapallo, J., referring to the rule established in *Denton* v. *Noyes*, and to the cases following it, said : " For reasons of public policy the court holds the appearance good, leaving the aggrieved party to his action for damages against the attorney, granting relief against the judgment only in a direct application."   See, also, *Sperry* v. *Reynolds* (65 N. Y. 183).

The jurisdiction of a court of equity to set aside a judgment at law obtained by fraud or on other grounds of equitable cognizance has been often asserted and is unquestioned, and it is not necessary now to deny that under special circumstances, where the question of the unauthorized appearance is

complicated with fraud, or the rights of purchasers, or the cir-
cumstances are such that the court can see that the right to
or measure of relief cannot properly be determined on motion
having regard to all interests affected, resort may be had to a
bill in equity, or now, in this state, to an equitable action.
There are several cases in other courts where jurisdiction in
equity by original bill to set aside a judgment entered on an
unauthorized appearance by attorney has been entertained.
But all of them are marked by peculiar and special features,
such as those to which we have adverted. (*Shelton* v. *Tiffin,*
6 How. [U. S.] 163; *Harshey* v. *Blackmarr,* 20 Iowa, 161;
*Wiley* v. *Pratt,* 23 Ind. 628.) In *Critchfield* v. *Porter* (3
Ohio, 518) the Supreme Court of Ohio dismissed a bill filed for
relief against a judgment rendered on an appearance of an
attorney without authority, on the express ground that the
remedy should be sought by application to the court in which
the judgment was rendered. It seems to us that upon con-
siderations, both of principle and policy, relief, except in
special cases, should be sought on motion in the action. It is
the established rule, where courts of law and equity are sepa-
rated, that equity will not grant its aid where there is a plain
and adequate remedy at law. Under our system of procedure
relief on motion is administered upon equitable as well as legal
principles. In ordinary cases, where relief is sought against
a judgment on the ground that the appearance of an attorney
was unauthorized, the rights of the parties can be as fully
presented and as carefully adjudged on a motion as in an
action. If the facts are controverted, and the court is not
satisfied upon the affidavits and papers presented as to what
the real facts are, it may refer the matter for the purpose of
taking further evidence, and may require the parties to submit
to an oral examination or cross-examination. (Code Civ. Pro.
§ 1015.) The court, on a motion, possesses indeed all the sub-
stantial powers in conducting an investigation which formerly
appertained to the chancellor. The remedy by motion is
more convenient, prompt and less expensive than by action.
The unbroken practice, which seems to have prevailed in this

state, to seek relief in cases like this by motion and not by action has almost the force of law, and ought, we think, to be followed unless special circumstances exist which may render that remedy inadequate or incomplete. No such special circumstances existed in the present case, and we are, therefore, of opinion, notwithstanding the observations of Grover, J., in his dissenting opinion in *Brown* v. *Nichols*, that the order below cannot be sustained on the ground that it was discretionary with the court to remit the appellant to a remedy by action.

In disposing of this appeal it must, we think, be assumed, upon the papers presented on the motions, that the appellant Chase was neither served with process in the action nor authorized Mr. Whiting to appear for him, and also that he had no knowledge that such an action had been brought, nor any notice thereof until February, 1881, after the rendition of the judgment of the Special Term. These facts are specially and particularly alleged in the moving papers, and are in no respect controverted by the opposing affidavits. The other circumstances are also consistent with the claim made. Chase was a non-resident of the state during the whole period of the litigation. That he was never served with the process is conceded. Mr. Whiting, on the occasion of the interview with Mr. Dabney, the attorney employed by Mr. Chase after he had been notified of the judgment rendered against him, admitted that he was not retained by Mr. Chase personally, and that he appeared for him by direction of Mr. Page, one of the co-defendants. Mr. Chase did not know Mr. Whiting and never saw him prior to the rendition of the judgment. He swears that he had no knowledge that Vilas made any claim against him. He knew that Vilas claimed title to rolling stock of the Plattsburgh & Montreal Railroad Company, which, if established in the foreclosure action would, under the agreement between him and the receiver, be converted into a lien on the property. In the present action Vilas claimed that Page, Butler and Chase were jointly liable to him for the lien debt; but this claim was adjudicated adversely to him by the

judgment of this court.   (106 N. Y. 440.)   There is no suggestion that Vilas ever asserted any personal claim against Chase except by and through the complaint in this action. The relations between Chase and Page at the time of the alleged retainer by the latter of Whiting to appear for Chase were hostile and so continued.   But Page had an interest, in case the claim of Vilas for a personal judgment against the individual defendants should be established, that Chase should be bound by the judgment.   The Delaware & Hudson Canal Company (the real party opposing these motions) not only omitted to controvert any of the statements in the moving papers on the subject of the unauthorized appearance, but made no request for a reference to ascertain the facts, nor that it might be afforded an opportunity to cross-examine Chase or the other affiants on the subject.

The main question of law respects the relief, if any, to which Chase is entitled against the judgment by reason of the unauthorized appearance of Mr. Whiting.   It is obvious that the court acquired no jurisdiction to render a personal judgment against Chase, unless the appearance, although unauthorized, conferred jurisdiction, or unless the authority of the attorney to appear is conclusively presumed from the fact of appearance.   The case of *Denton* v. *Noyes* (*supra*), held that a domestic judgment rendered by a court of general jurisdiction against a party who had not been served with process, but for whom an attorney of the court had appeared, though without authority, was neither void nor irregular.   The doctrine of the prevailing opinion in that case encountered a vigorous opposition from one of the judges at the time, and it is not too much to say that the reasoning upon which it rests has frequently been criticised by judges and the justice of the rule denied.   But it has been followed and must be regarded as the law of the state.   (*Hamilton* v. *Wright*, 37 N. Y. 502; *Brown* v. *Nichols*, 42 id. 26.)

The courts in this state, while holding that domestic judgments rendered against a party not served, but for whom an attorney appeared without authority, cannot be assailed on

this ground when coming in question collaterally, nevertheless grant relief, on motion, either by setting aside the judgment absolutely, or by staying proceedings and permitting the party to come in and defend the action. Where the attorney is insolvent the judgment will be absolutely vacated and set aside. (*Campbell* v. *Bristol*, 19 Wend. 101.) In other cases the proceedings will be stayed and the party permitted to come in and defend. The latter relief was granted in *Denton* v. *Noyes* (*supra*). In the present case no relief whatever was granted, but the application therefor was denied absolutely. Even if the judgment against Chase is governed by the rule established in *Denton* v. *Noyes* (which, for reasons which will be, stated, does not, we think, apply), then it would seem that the court erred in denying relief. It is shown by the affidavit of the son of Mr. Whiting, which is uncontradicted, that his father's estate, at the time of his death in 1885, was entirely inadequate to pay the amount of the judgment against Chase. It is not expressly shown what the pecuniary condition of Mr. Whiting was in 1881, when the judgment against Chase was entered; but assuming that Mr. Whiting had sufficient pecuniary ability at that time to respond in damages for the amount of the judgment, that, we think, is not controlling to prevent relief on an application made after he became insolvent, provided it was made before the rights of the party procuring the judgment had changed to his prejudice. The party against whom the judgment was rendered would still be entitled, we think, to apply for and obtain relief by the vacation of the judgment. The plaintiff has no equity which entitles him to claim that the party injured should have been prompt to pursue and obtain a remedy by action against the attorney for damages and thereby enable the plaintiff to have the benefit of the judgment. Moreover, the judgment of the court in 106 N. Y., in the present action, conclusively determined as between the plaintiff and the defendants Page and Butler, that the latter had never assumed any personal obligation for the lien debt. If this judgment was not technically an estoppel of record as to the same question arising between the

plaintiffs and Chase, on the ground that he was not a party to the appeal, nevertheless it furnishes a strong reason for granting him absolute and final relief on this application, even if the estate of Mr. Whiting was solvent, instead of granting limited relief by a stay of proceedings merely, with a right to come in and defend the action, thereby subjecting Chase to the trouble and expense of a new trial, which could have but one result.

We have so far considered the case upon the assumption that it is governed by *Denton* v. *Noyes* and the cases following it. But we are of opinion that a radical distinction exists between the cases hitherto decided and the present one, which prevents the application of the principle that, in the case of a domestic judgment strictly, a party not served, but for whom an unauthorized appearance was entered by an attorney, cannot, on these grounds, assail the judgment for want of jurisdiction. The distinction adverted to lies in the fact, that in the cases hitherto decided in this state arising on domestic judgments, the judgment rendered was against a citizen of the state, who was within the jurisdiction, while in the present case the defendant in the judgment was at all time a non-resident and out of the jurisdiction. It is well settled that, in an action brought in our courts on a judgment of a court of a sister state, the jurisdiction of the court to render the judgment may be assailed by proof that the defendant was not served and did not appear in the action, or where an appearance was entered by an attorney, that the appearance was unauthorized, and this even where the proof directly contradicts the record. (*Starbuck* v. *Murray*, 5 Wend. 148; *Shumway* v. *Stillman*, 6 id. 447; *Kerr* v. *Kerr*, 41 N. Y. 278; RAPALLO, J., *Ferguson* v. *Crawford*, 70 id. 257.) The same rule is held elsewhere, and is not inconsistent with the constitutional obligation under the Constitution of the United States that full faith and credit shall be given in each state to the judgments of other states. (*Gilman* v. *Gilman*, 126 Mass. 26; *Wright* v. *Andrews*, 130 id. 149; *Thompson* v. *Whitman*, 18 Wall. 457; *Knowles* v. *Gas Light & C. Co.*, 19 id. 58.)

There is undoubtedly a logical difficulty in applying a different rule, as our courts do, in an action upon a domestic judgment, where the only thing giving color of jurisdiction over the person is an unauthorized appearance by an attorney. The different rule in the two cases has been supposed to rest on the unreasonableness of compelling a party against whom judgment has been rendered in another state on an unauthorized appearance by an attorney, to go to the foreign jurisdiction to attack it. (See DILLON, J., in *Harshay* v. *Blackman*, 20 Iowa, 161.) The same reason, in justice, would seem to apply in case of domestic judgment against a non-resident of the state, and, besides, it may be said that a non-resident, not served with process and for whom an unauthorized appearance had been entered in the foreign jurisdiction, would be much less likely to become appraised of the pendency of the action than if he had been a resident. In *Nordlinger* v. *DeMier* (54 Hun, 276), the General Term of the Supreme Court in the first department, BARRETT, J., writing the opinion, set aside an unauthorized appearance entered for a non-resident defendant on the precise ground that the rule in *Denton* v. *Noyes* did not apply in such a case. *Bodurtha* v. *Goodrich* (3 Gray, 508) was the case of an unauthorized appearance by an attorney for Bodurtha, a non-resident of Massachusetts, in an action brought in the latter state. The court reversed the judgment on writ of error, SHAW, Ch. J., saying : "It would certainly be very strange if an inhabitant of another state could thus be bound by a judgment given and recorded by a court having no jurisdiction, without any act or default of such party." In *Wiley* v. *Pratt* (23 Ind. 629), the court, in a case of a domestic judgment where the party had not been served, but for whom an unauthorized appearance had been entered, adopted substantially the English rule, as announced in *Bayley* v. *Buckland* (1 Exch. 1), that where a defendant had been served and an unauthorized appearance entered, the judgment would not be set aside, but if he had not been served it would be. RAY, Ch. J., after stating what he conceived to be the

true rule, but excepting from it the case of a domestic judgment against a non-resident not within the jurisdiction, said: "Where the defendant has not been within the jurisdiction of the court, it would not be just to compel him to come under that jurisdiction and establish his defense to the action in order to claim relief from a judgment obtained without notice, and, therefore, the relief granted here must be absolute immunity from the judgment."

We are bound, under our decisions to follow the doctrine of *Denton* v. *Noyes* in cases where it is strictly applicable. It is as to such cases *stare decisis*. But we are not disposed to extend the doctrine of that case to cases fairly and reasonably distinguishable, and the fact that a defendant, against whom a judgment has been obtained here upon an unauthorized appearance by an attorney, and who was not served, was a non-resident during the pendency of the proceedings, and was not within the jurisdiction, does, we think, constitute such a distinction as renders the rule in that case inapplicable.

Upon the point made by the Delaware & Hudson Canal Company that the defendant Chase is precluded from relief by his laches, but little need be said. The Delaware & Hudson Canal Company acquired its interest in the property of the Plattsburgh & Montreal Railroad Company in 1872. It took from Page his individual guaranty against the claims of third persons on the property, including the claim of Vilas. Neither Butler nor Chase were parties to the guaranty. In 1881, soon after the judgment against Chase was rendered, it was appraised of his claim that he had not been served in the action and that the appearance of Whiting was unauthorized. When Vilas sued Chase on the judgment in Massachusetts, the latter promptly disavowed the jurisdiction of the court to render the judgment. Vilas, after the lapse of about two years, suffered a nonsuit, inferrably because he was unable to establish the jurisdiction, and he took no further proceedings to collect the judgment, but after the final decision in this court, he assigned the judgment against Chase to the Delaware & Hudson Canal Company, on being paid the amount of

the lien adjudged in the action against the property in the possession of that company. The company took the assignment with full notice of the equities of Chase. The delay of Chase has not, so far as appears, changed the situation of either Vilas or the Delaware & Hudson Canal Company to the prejudice of either, and under such circumstances the plea of laches, as was said in *Platt* v. *Platt* (58 N. Y. 646), will not be readily listened to, and ought not, we think, to be listened to in this case to uphold a judgment, which, as was held by this court on the appeal of the co-defendants of Chase, standing in the same position with him, had no legal foundation.

We think the motions in this case should have been granted, and the judgment and appearance vacated.

The orders of the Special and General Terms should, therefore, be reversed and the motions granted, with costs.

All concur.

Ordered accordingly.