◼ ELSA T. RAMM, Appellant, v. AUGUST H. RAMM et al., Respondents.— In an action for declaratory judgment, plaintiff appeals from a judgment of the Supreme Court, Queens County, dated January 3, 1969 and made after a nonjury trial, which declared, *inter alia,* that plaintiff and defendant August H. Ramm (hereinafter referred to as "the defendant") were legally and effectively divorced as of January 12, 1962. Judgment modified, on the law, by striking therefrom the last decretal paragraph, which directs that the action is dismissed. As so modified, judgment affirmed, with costs to respondents. The findings of fact below are affirmed. The major issue on this appeal is whether a belated appearance in a Mexican divorce action, entered after the rendition therein of a final judgment of divorce that was void and nonrecognizable in this State when rendered, which appearance resulted in a post-judgment declaration by the Mexican court that the judgment was *res judicata* and invulnerable to attack by the parties or by a stranger to the action, qualifies the divorce for recognition here as of the date of the appearance. The trial court in the instant action held that it does, on the authority of *Hytell* v. *Hytell* (44 Misc 2d 663). We adopt the rule of the cited case. Plaintiff and defendant were married in this State on or about June 5, 1938 and continued to reside as husband and wife until sometime in January of 1950 when defendant allegedly physically separated from plaintiff. On or about September 27, 1960 defendant obtained a divorce in Juarez by appearing personally in

the First Civil Court of the District of Bravos, State of Chihuahua, Mexico. Plaintiff did not appear by attorney and denied she had ever been served with process. It is not contended that this divorce was valid under our law when rendered (*Rosenstiel* v. *Rosenstiel,* 16 N Y 2d 64). Shortly thereafter defendant remarried in the State of Connecticut. On or about October 19, 1961 plaintiff commenced an action for a declaratory judgment in the Supreme Court, Westchester County, seeking, *inter alia,* a declaration of the invalidity of the Mexican divorce. The action was discontinued by stipulation of the parties dated December 27, 1961. Two days later plaintiff, represented by counsel and after conferring with him, signed a general release and simultaneously signed a document styled " Defendant's Special Power of Attorney" which, by its terms, appointed one Trias, a Mexican attorney, " to appear for and represent me in the divorce action that my husband * * * has instituted against me * * * and to state in my name, that I am in complete conformity with the judgment which was rendered in the said action, that I submit myself expressly to the jurisdiction of the Court and that I accept the aforesaid judgment as final and conclusive; and generally to act * * * with full power of substitution, hereby ratifying and confirming and holding valid all that my said attorney shall lawfully do or cause to be done by virtue of these presents." Plaintiff signed these documents only after her attorney had informed her that her husband required them before releasing to her $15,000 which was being held in escrow and had further informed her that the document was "intended to validate the prior decree of divorce." We agree with the trial court that the evidence supports the finding that plaintiff " knowingly and willingly" executed the documents in question. On or about January 12, 1962, one Carlos Martinez Alvidrez, another Mexican attorney, submitted a petition to the First Civil Court of the District of Bravos, under the authority of the afore-mentioned power of attorney, in which, after stating plaintiff's submission to the jurisdiction of the court and her conformity with the judgment previously rendered, he requested the court to acknowledge his personal appearance on plaintiff's behalf, to declare the prior judgment *res judicata* and invulnerable to attack by the parties or by a stranger to the action and to issue a certified copy of the judgment to him. On or about January 15, 1962, a decision of the court was rendered which acknowledged pleading and ordered the pleading to be added to the file of the divorce action in the records of the court, "in accordance with the provisions of Articles 39 of the Law of Divorce and 85 of the Code of Civil Procedures." A certified copy of the judgment of divorce, the petition of Alvidrez and the decision of the court, with its English translation, were sent to plaintiff and received by her in the latter part of January, 1962. She commenced the instant action on April 7, 1965. Plaintiff contends that the decision of the Mexican court was ineffective to qualify the divorce for recognition in this State, because Mexican courts have no authority to reopen their divorce decrees under any circumstances, and, since defendant did not personally appear either on the date of the submission of plaintiff's power of attorney or on the date of the decision thereupon, that the subsequent decision of the Mexican court does not conform with the personal contact requirement of *Rosensteil* (16 N Y 2d 64, *supra*). In addition, plaintiff denies the authority of Alvidrez to appear on her behalf and contends that, at any rate, her appearance was obtained as a result of an illegal contract to alter or dissolve a marriage in contravention of section 5-311 of the General Obligations Law. In *Hytell* v. *Hytell* (44 Misc 2d 663, *supra*), on substantially the same facts, the Special Term held that the parties were legally and effectively divorced as of the date of the petition to the

Mexican court. Mr. Justice BERNARD S. MEYER concluded as follows: "Plaintiff argues that Mexican law does not recognize a *nunc pro tunc* order and the experts for both parties so testified. The * * * decision in the Mexican proceeding was not a *nunc pro tunc* order, however, but the recording of plaintiff's submission to the court. The court finds, as defendant's expert testified, that under article 395 of the Code of Civil Procedure of Mexico, the judgment of divorce, even if originally defective, became *res judicata* by judicial declaration because expressly consented to by plaintiff through her attorney acting under a power of attorney conforming to the requirements of article 395. The fact that neither party appeared in Mexico * * * has no bearing since Mexican law did not require such appearance and New York law requires nothing more than *an* appearance by one of the parties to the proceeding, which took place in September, 1957. That defendant's personal appearance and plaintiff's appearance by attorney took place in two stages rather than one furnishes no reason for refusing to accord to a decree binding upon plaintiff under Mexican law recognition under New York law" (p. 666; emphasis in original). We agree with this statement. Plaintiff is in error when she assumes that resurrection of a void decree is the *sine qua non* of recognition in this case. We are here recognizing and applying Mexico's law of *res judicata*— not divorce. By her voluntary submission to the jurisdiction of the Mexican court, plaintiff foreclosed herself, as well as strangers to the decree, from attacking the decree in the rendering jurisdiction. "While 'we are under no constitutional compulsion to give full faith and credit' to the judgment of a court of a foreign nation * * * we frequently recognize such a judgment 'as a matter of comity'" (*Schoenbroad* v. *Siegler,* 20 N Y 2d 403, 408). There are situations in which we may decline to give final effect to judgments of foreign nations (*Schoenbrod* v. *Siegler, supra*; *De Pena* v. *De Pena,* 31 A D 2d 415). However, where, as here, the underlying decree which thus becomes final is not obnoxious to our public policy and the procedures leading to the declaration of finality do not violate accepted standards of fair play and substantial justice, we conceive the mandates of sound jurisprudence and public policy to require that the decree be given that *res judicata* effect which it is accorded in the rendering jurisdiction. It should not matter, as a general rule, "that we are dealing here with an earlier judgment rendered by a Mexican court rather than by a court of our own or a sister state" (*Schoenbrod* v. *Siegler,* 20 N Y 2d 403, 408, *supra*). No such recognition would be afforded had the underlying decree been totally repugnant to our public policy as, for example, if the parties had obtained a so-called "mail-order" divorce without personal appearance by either side. The decree at bar was obtained on the personal appearance of the husband. Under these circumstances, we see no impediment to extending recognition to the *res judicata* effect of the January 12, 1962 decision. Accordingly, if plaintiff in fact did appear in Mexico we are of the opinion that she should be foreclosed from relitigating the issues decided in that suit. However, plaintiff may properly raise the claim that her appearance was unauthorized (*Vilas* v. *Plattsburgh & Montreal R. R. Co.,* 123 N. Y. 440). The record is devoid of any explanation of the substitution of Alvidrez for Trias and, under these circumstances, the fact that another attorney appeared and did solely what the first one was authorized to do "with full power of substitution" is not sufficient to cast a cloud over the proceeding. Although it appears that the attorney involved here bore the same name as the attorney who represented the husband in Mexico, there is nothing in the record to suggest that he is one and the same man; nor has plaintiff shown that under Mexican law that attorney would be

forbidden to represent her for the limited purposes herein, assuming he was the same man. Therefore, without determining the quantum of proof necessary to upset a judgment of a foreign nation which is otherwise regular on its face (cf. dissenting opinion of Judge BURKE in *Schoenbrod* v. *Siegler*, 20 N Y 2d 403, 410, *supra*), we hold that plaintiff failed to come forward with proof sufficient to offset the presumption of regularity (Richardson, Evidence [9th ed.], § 71; and cases cited therein). Plaintiff's last contention is similarly unavailing. An agreement made *after* the entry of a foreign divorce judgment is not rendered illegal merely because "in connection with the making of the agreement the wife put in an appearance in the foreign suit and thus gave the decree some appearance of due process, which it otherwise might seem to lack" (*Matter of Rhinelander*, 290 N. Y. 31, 38). In addition, the agreement involved here did not contain an express provision requiring the dissolution of the marriage or the procurement of grounds for divorce (General Obligations Law, § 5-311). The judgment appealed from should not have included a provision dismissing the action (*Lanza* v. *Wagner*, 11 N Y 2d 317, 334). Brennan, Acting P. J., Rabin, Hopkins and Benjamin, JJ., concur: Munder, J., dissents and votes to reverse the judgment and to declare that plaintiff and defendant husband were not legally and effectively divorced as of January 12, 1962, with the following memorandum: I dissent for several reasons. First, I cannot accept the position of the majority that it is "recognizing and applying Mexico's law of *res judicata* — not divorce." To me, this is simply an exercise in semantics. The judgment appealed from adjudged that Elsa and August Ramm were legally divorced in January, 1962, and by affirming that judgment the majority is clearly applying the Mexican divorce law. In so doing, under the circumstances of this case, it is going contrary to a long line of New York cases which have held that where, as here, one of the parties to a foreign divorce action is not personally served with process and neither appears nor submits to the foreign jurisdiction the resulting decree is void. As stated in *Rosenbaum* v. *Rosenbaum* (309 N. Y. 371, 376), such a decree is "a clear legal nullity * * * and of no more validity than a so-called mail-order divorce, from which * * * 'no rights of any kind may spring' (*Caldwell* v. *Caldwell*, *supra*, p. 151)." (See, also, *Rosenstiel* v. *Rosenstiel*, 16 N Y 2d 64, 72.) If this be so, a subsequent and questionable appearance by the nonappearing spouse cannot, in my opinion, miraculously breathe legal life into that nullity. Second, I cannot see how the majority can rely on the "presumption of regularity" to say that the appearance by someone not named by plaintiff in her executed power of attorney was effective to legally bind her. A power of attorney is an instrument by which the authority of *one* person to act in the place of another as attorney in fact is set forth (28 Carmody-Wait 2d, N. Y. Prac., § 169:172). When the act in question is performed by someone other than the person named, it seems to me a presumption of "irregularity" and not regularity should apply. This is not to say that the acts of someone other than the person named cannot thereafter be ratified or adopted by the principal, but I do not think ratification has been established at bar and the majority does not claim otherwise. Finally, since the 1960 divorce was a nullity, I cannot agree that the "agreement" signed by plaintiff in 1961, in return for which she received $15,000, can be said to have been made *after* the entry of a foreign divorce judgment (see *Matter of Rhinelander*, 290 N. Y. 31). It seems to me the *Rhinelander* case contemplated an agreement signed after a valid foreign judgment, not a nullity. Plaintiff testified that she signed the agreement upon the advice of her attorney that her signature was needed "in order to release certain funds that they had placed in

escrow, and that without the signature \* \* \* the money would not be released ". This, to me, shows the intent was to withhold the moneys from her unless she agreed to do what the parties thought necessary to effectively dissolve their marriage. This violates the spirit if not the letter of section 5–311 of the General Obligations Law and should not be permitted.