Skyline Agency, Inc., Appellant, v Ambrose Coppotelli, Inc.,
et al., Defendants, and Frank Coppotelli, Respondent.

Second Department, May 12, 1986

## APPEARANCES OF COUNSEL

*James P. Maniatis (David Cohen* on the brief), for appellant.

*Lemole McCarthy Magnotti & Peter J. Napolitano (Paul A. Lemole* of counsel; *Rodney Stilwell* and *Christopher P. Nalley* on the brief), for respondent.

## OPINION OF THE COURT

BROWN, J.

The question to be decided on this appeal is whether an attorney's unauthorized appearance conferred personal jurisdiction over the individual for whom the attorney purported to appear when that individual neither had been served with process nor had become aware of the fact that an action had been brought against him until subsequent to judgment. We conclude that, under such circumstances, personal jurisdiction is not acquired and the judgment entered as a result of such an unauthorized appearance must be vacated.

The defendants Frank Coppotelli, his brother Dominic Coppotelli, and his father Ambrose Coppotelli were the principal shareholders of the corporate defendant, Ambrose Coppotelli, Inc. For several years prior to 1974 the corporation owned a restaurant in Staten Island, together with the real property upon which it was located. During this time, Dominic had been the president and chief operating officer of the restaurant, while his brother Frank and his father Ambrose apparently had not been actively involved in the business.

Sometime in January 1974 George Soumakis, the president of the plaintiff real estate broker, Skyline Agency, Inc. (hereinafter Skyline), approached Dominic to discuss a possible sale of the restaurant and the real property upon which it was

situated, as well as a private residence immediately adjacent thereto which was owned by Dominic, his wife, and his father Ambrose. Within a few weeks, a contract of sale was prepared and executed under which the restaurant, the property upon which it was located and the adjacent private residence were to be sold to Avocos Corp., a buyer produced by Skyline. Thereafter, on or about April 25, 1974, the transaction was consummated with the transfer of all of the stock of Ambrose Coppotelli, Inc., together with the private residence, to Avocos Corp. As part of the financial arrangements for the transaction, Avocos Corp. gave a purchase-money mortgage to Frank, Dominic and Ambrose Coppotelli. Thereafter, the purchase-money mortgage was foreclosed and the real properties were conveyed to Ambrose Coppotelli and his sons, as tenants in common.

Shortly before the consummation of the sale to Avocos Corp., Mr. Soumakis and Dominic Coppotelli entered into a brokerage agreement under which Skyline's brokerage commission on the sale was agreed upon in the amount of $45,000, payable in monthly installments of $1,000, subject to the closing of title and the transfer of the business. Skyline claims that thereafter only six installments were paid to it under the agreement.

On or about April 10, 1980, Skyline commenced the instant action against the Coppotellis and Ambrose Coppotelli, Inc., seeking to recover the balance allegedly due under the brokerage agreement. Following service of the summons and complaint upon him, Dominic Coppotelli retained Philip J. Fitzpatrick, an attorney, to appear on his behalf and purportedly to appear as well on behalf of his brother, his father, and the corporation. Following his retention, Mr. Fitzpatrick filed a notice of appearance and an answer on behalf of all the defendants and later interposed an amended answer and filed a demand for a bill of particulars on their behalf.

On March 14, 1983, the parties—the defendants now purportedly appearing by one John Thomas Roesch, as counsel to Fitzpatrick—entered into a stipulation in open court providing for settlement of the action for the sum of $17,000. It was further provided that if payment was not made within 30 days, Skyline could enter a default judgment against the defendants for the entire amount alleged to be due, to wit, $39,000. Thereafter, on May 10, 1983, following the defendants' failure to pay the settlement amount within the allotted time, a judgment was entered pursuant to the parties'

stipulation against the defendants in the sum of $39,000. Based upon that judgment, Skyline's counsel thereafter issued an execution, with notice to garnishee, to three individuals who were indebted to Frank Coppotelli under a mortgage and petitioned the court for entry of a judgment directing the mortgagors to pay Skyline the sum of $39,152 in satisfaction of the outstanding judgment against the defendants.

Thereafter, by order to show cause dated October 24, 1983, Frank Coppotelli moved, *inter alia,* for an order pursuant to CPLR 5015 (a) (3) and (4), vacating the judgment insofar as entered against him. In support of his application, he alleged that he had never been served with process in the action and that he had first become aware of the action and of the judgment therein in June of 1983 when execution was levied upon the mortgage payments due to him. He claimed that without his knowledge or consent, his brother Dominic had apparently retained Fitzpatrick to defend the action and that Fitzpatrick had entered an appearance on his behalf without his knowledge or authorization and without his ever having been advised of the pendency of the action. In addition, Frank Coppotelli asserted a number of defenses addressed to the merits of the action, including the fact that he had never been a party to the brokerage agreement with Skyline and could not therefore be held accountable thereunder. Also submitted in support of the application was an affirmation of Fitzpatrick in which he acknowledged that he had never had any contact with either Frank or Ambrose Coppotelli and further that "[a]t the time of settlement, and throughout my involvement in this action, I acted pursuant to the instructions of Mr. DOMINIC COPPOTELLI alone, upon the belief that he was authorized to act on behalf of the other named defendants based upon his representation to this effect".

Skyline opposed the motion, arguing, *inter alia,* that personal jurisdiction was acquired over Frank Coppotelli by personal service upon him of the summons and complaint. It further argued that because of the close relationship among the defendants, it was difficult to believe that Dominic Coppotelli acted without the knowledge of his brother Frank in retaining counsel and that the appearance of Fitzpatrick should thus be held to be binding upon Frank. The plaintiff also submitted an affirmation of one of its attorneys, John F. Welling, who reaffirmed the contents of his prior affidavit of personal service upon Frank Coppotelli, sworn to on April 11, 1980.

By order dated March 13, 1984, Special Term directed that a hearing be held on the issues of whether proper service was effected upon Frank Coppotelli and whether Fitzpatrick had had authority to appear on his behalf. Following the hearing, Special Term concluded that personal service had never been effected upon Frank and that it, therefore, lacked personal jurisdiction over him. Accordingly, Special Term vacated the judgment as against Frank Coppotelli. Based upon its finding, the court concluded that the issue of Fitzpatrick's authority to appear on Frank Coppotelli's behalf had become moot.

While Special Term's determination as to the lack of personal service was, in our view, correct, we do not agree that the question of Mr. Fitzpatrick's authority to appear on Frank Coppotelli's behalf is moot. For the reasons stated herein, we find it necessary to reach that issue and upon our review thereof we conclude that vacatur of the judgment as against Frank Coppotelli was appropriate. Accordingly, we affirm.

■ At the outset, we address the issue of whether jurisdiction was acquired over Frank Coppotelli by proper service of process. In New York, a civil action is generally commenced and jurisdiction acquired by service of a summons (CPLR 304). While there are a number of methods by which a summons may be served upon a natural person, the method claimed to have been utilized at bar to effect service was personal delivery of the summons pursuant to CPLR 308 (1). It is well established that the burden of proving that personal jurisdiction was acquired rests at all times upon the plaintiff in the action *(Green Point Sav. Bank v Taylor,* 92 AD2d 910; *Bernardo v Barrett,* 87 AD2d 832, *affd* 57 NY2d 1006). Ordinarily, a proper affidavit of a process server attesting to personal delivery of a summons to a defendant is sufficient to support a finding of jurisdiction. Where, however, as here, there is a sworn denial of service by the defendant, the affidavit of service is rebutted and the plaintiff must establish jurisdiction by a preponderance of the evidence at a hearing *(Anton v Amato,* 101 AD2d 819; *De Zego v Donald F. Bruhn, P. C.,* 99 AD2d 823, *affd* 67 NY2d 875). Based upon the evidence adduced at the hearing herein, including the fact that the physical description in the affidavit of service of the individual allegedly served differed considerably from the physical appearance of Frank Coppotelli, and the further fact that the process server failed to identify Frank Coppotelli in court as the person upon whom he had served process, there was a more than adequate basis for the hearing court's determina-

tion that Frank Coppotelli was never personally served with process. Accordingly, we conclude that Special Term properly held that personal jurisdiction over Frank Coppotelli was not acquired by personal service of process upon him (CPLR 304, 308 [1]).

■ However, as indicated, we disagree with Special Term's conclusion that having determined the question of acquisition of jurisdiction by service of process against the plaintiff, the issue of whether Fitzpatrick's appearance on behalf of Frank Coppotelli was authorized becomes moot. To the contrary, once it was found that personal jurisdiction had not been acquired, the court should have shifted its focus to the question of whether the appearance by Fitzpatrick on Frank Coppotelli's behalf amounted to a waiver of the right to challenge jurisdiction. An appearance by a defendant in an action is deemed to be the equivalent of personal service of a summons upon him, and therefore confers personal jurisdiction over him, unless he asserts an objection to jurisdiction either by way of motion or in his answer (CPLR 320 [b]; 3211 [a] [8]; *Colbert v International Sec. Bur.,* 79 AD2d 448). By statute, a party may appear in an action by attorney (CPLR 321), and such an appearance constitutes an appearance by the party for purposes of conferring jurisdiction *(see, People ex rel. Bellanca v Morgan,* 235 App Div 317; *Franklin v Lee,* 233 App Div 592, *affd* 259 NY 532).

At bar, Fitzpatrick, who purported to appear on behalf of all of the defendants, answered the complaint without asserting any objection to jurisdiction. Accordingly, in the ordinary course of events, the defendants would be deemed to have waived any objection to personal jurisdiction (CPLR 320, 321, 3211 [a] [8]; [e]). The defendant Frank Coppotelli, however, asserts that he never elected to appear in this action, either by an attorney (CPLR 321) or otherwise. He claims that he was ignorant of the existence of the action and that Fitzpatrick was without authority to submit him to the jurisdiction of the court. It is clear from the evidence adduced at the traverse hearing that Fitzpatrick had never had any contact with Frank Coppotelli with regard to this action, but acted solely upon the authority of Frank's brother, Dominic. The plaintiff offered no evidence which could be considered sufficient to rebut this conclusion.

Were we deciding this case on a clean slate, we would have no difficulty in finding that, under the circumstances, where the defendant Frank Coppotelli was never served with process

and never appeared in the action or knew of its existence, the unauthorized service of a notice of appearance and answer on his behalf was insufficient to confer jurisdiction upon him. Such a conclusion comports with well-established principles of personal jurisdiction and agency. There is, however, a legacy of *old* case law which would appear to dictate a contrary result. Nevertheless, we are satisfied that this is one of those rare instances where departure from stare decisis and outmoded and no longer viable precedent is warranted *(see, Woods v Lancet,* 303 NY 349, 355; *Brock v Bua,* 83 AD2d 61, 66-68; *Greenberg v Lorenz,* 12 Misc 2d 883, *mod on other grounds* 7 AD2d 968, *mod on other grounds* 9 NY2d 195). Indeed, as is hereinafter pointed out, our colleagues in the Third Department have expressly departed from this ancient case law on the specific issue involved herein *(Wickham v Liberty Mut. Ins. Co.,* 73 AD2d 742).

Simply stated, the rule, which traces its origin to English case law, holds that the unauthorized acts of a duly admitted attorney may serve to extend jurisdiction over a New York resident who has not otherwise subjected himself to the jurisdiction of the court. From its inception, however, the rule has been criticized and its original scope has been narrowed *(see, Unauthorized Appearance,* 25 St. John's L Rev 325; *Article III of the New York Civil Practice Law and Rules: Jurisdiction, Service and Appearance,* 37 St. John's L Rev 285; Siegel, NY Prac § 115).

The rule that a defendant will ordinarily be precluded from attacking a judgment entered against him on the ground that personal jurisdiction was conferred simply by virtue of an unauthorized appearance was first enunciated in New York in the case of *Denton v Noyes* (6 Johns 296 [1810]). In *Denton,* an attorney appeared for a defendant against whom a writ had been issued but not served and confessed a judgment which was entered. Chief Justice Kent, writing for the majority of the court, relying on a number of early English authorities on the subject, recognized the rule that "[i]f the attorney has acted without authority, the defendant has his remedy against him; but the judgment is still regular, and the appearance entered by the attorney, without warrant, is a good appearance, as to the court" *(Denton v Noyes, supra,* at p 300). In enunciating the rule, however, the court, in an effort to prevent what it perceived might be an unjust result to the defendant and to prevent an abusive practice, held that in such cases the defendant should be permitted to defend the

suit on the merits. In so ruling, the court also noted that the basic rule as laid down by the English courts contained the caveat that if the attorney who improperly appeared for the defendant was not responsible or otherwise competent to respond in damages to his purported client, then the defendant would be relieved from the judgment *(Denton v Noyes, supra,* at p 300).

Thus, from the outset, there was an awareness of the unfairness that strict adherence to the rule might work, both as to those defendants who had a meritorious defense to the claim made against them and to those who were without recourse against the errant attorney. It bears noting that the *Denton* case *(supra)* was decided over a vigorous dissent by Judge Van Ness, who argued that a close examination of the English cases cited by the majority in support of the rule revealed that they were distinguishable in various respects from the facts before the court. The majority position prevailed, however, and the *Denton* rule was thereafter followed during the early and middle part of the nineteenth century *(Grazebrook v M'Creedie,* 9 Wend 437; *Adams v Gilbert,* 9 Wend 499; *Campbell v Bristol,* 19 Wend 101; *American Ins. Co. v Oakley,* 9 Paige Ch 496; *Hamilton v Wright,* 37 NY 502; *Brown v Nichols,* 42 NY 26; *Ferguson v Crawford,* 70 NY 253). Throughout, however, the rule remained the subject of strong criticism and dissent. In *Brown v Nichols (supra),* for example, which was decided by the Court of Appeals in 1870, Judge Grover, in his dissenting opinion, questioned the apparent logical inconsistency in applying the *Denton* rule to uphold judgments rendered in this State where the sole basis for jurisdiction was an unauthorized appearance by an attorney, while at the same time applying a contrary rule in denying recognition under the full faith and credit clause to certain judgments rendered by sister States upon the ground of lack of jurisdiction, where jurisdiction was asserted on the same basis *(Brown v Nichols, supra,* at pp 39-40). In challenging the reasoning behind the *Denton* rule, Judge Grover also argued: "The proposition that, by the admission by the court to practice as an attorney, power is conferred upon the attorney to confer jurisdiction upon the court as to all mankind, by his appearance, without any authority whatever therefor, is a proposition so entirely at variance with reason and all the analogies of the law as scarcely to be capable of discussion. It is rightly said that jurisdiction may be acquired of the person either by service of process or the voluntary appearance of the

party, and that a party may legally appear in person or by attorney. From this it is argued that the appearance of the attorney is legal as to the court and opposite party. But this is begging the whole question. The admission of an attorney confers upon him no more right to appear for another in court, without being authorized, than it does to act as his agent in any other matter. True, no one can appear in court as the attorney of another without having been admitted as attorney by the court; but, having been so admitted, he has no power to appear for another, unless authorized so to do, any more than to act as his agent in matters where no license from the court is required. His appearance, under such circumstances, is not the appearance or act of the party in any sense, but his own act, for the consequences of which he alone is responsible, the same as any other agent assuming to act for another without authority in any other matter" *(Brown v Nichols, supra,* at p 41). Further, as to the public policy consideration upon which the *Denton* rule was grounded, Judge Grover asked "whether it [was] better to require the opposite party to inquire into the power of an attorney when there is any possible doubt in regard to it, before any injury has arisen from his act, in case he does not possess it, or to hold a party bound by a judgment in an action of which he has had no knowledge and by the result of which he may be ruined" *(Brown v Nichols, supra,* at pp 41-42). It is no answer, he contended, to argue that the wronged party may apply to the court to be relieved of the judgment since there is a significant difference between a right to seek relief from a judgment based on law and the right to seek relief based upon the court's discretion. Ultimately, he concluded, such judgments should be declared void, leaving it to the plaintiff rather than the defendant to look to the attorney for redress.

Nevertheless, the *Denton* rule remained unchanged throughout most of the nineteenth century. In 1890, however, the Court of Appeals in *Vilas v Plattsburgh & Montreal R. R. Co.* (123 NY 440, 453), in an effort to move away from what it recognized was a rule that had "encountered a vigorous opposition" and which had seen "the reasoning upon which it rests * * * frequently * * * criticized" and its "justice * * * denied", declined to extend its scope to the case of an unauthorized appearance by an attorney on behalf of an out-of-State resident.

Initially, the court analyzed the case under the *Denton* rule and concluded that regardless of whether the estate of the

since deceased attorney was solvent and able to respond in damages for the unauthorized appearance, the defendant was entitled to absolute relief from the judgment on the merits since the court had previously reversed the judgment as to two codefendants against whom, along with defendant, the judgment had been jointly entered. Rather than disposing of the case on this ground, however, the court took the opportunity to carve out an exception to the *Denton* rule and thereby narrowed the scope of the much criticized rule. Judge Andrews, writing for the unanimous court, reasoned:

"We have so far considered the case upon the assumption that it is governed by *Denton* v. *Noyes* and the cases following it. But we are of opinion that a radical distinction exists between the cases hitherto decided and the present one, which prevents the application of the principle that, in the case of a domestic judgment strictly, a party not served, but for whom an unauthorized appearance was entered by an attorney, cannot, on these grounds, assail the judgment for want of jurisdiction. The distinction adverted to lies in the fact, that in the cases hitherto decided in this state arising on domestic judgments, the judgment rendered was against a citizen of the state, who was within the jurisdiction, while in the present case the defendant in the judgment was at all time a non-resident and out of the jurisdiction. It is well settled that, in an action brought in our courts on a judgment of a court of a sister state, the jurisdiction of the court to render the judgment may be assailed by proof that the defendant was not served and did not appear in the action, or where an appearance was entered by an attorney, that the appearance was unauthorized, and this even where the proof directly contradicts the record. (*Starbuck* v. *Murray,* 5 Wend. 148; *Shumway* v. *Stillman,* 6 id. 447; *Kerr* v. *Kerr,* 41 N.Y. 278; RAPALLO, J., *Ferguson* v. *Crawford,* 70 id. 257.) The same rule is held elsewhere, and is not inconsistent with the constitutional obligation under the Constitution of the United States that full faith and credit shall be given in each state to the judgments of other states. (*Gilman* v. *Gilman,* 126 Mass. 26; *Wright* v. *Andrews,* 130 id. 149; *Thompson* v. *Whitman,* 18 Wall. 457; *Knowles* v. *Gas Light & C. Co.,* 19 id. 58.) There is undoubtedly a logical difficulty in applying a different rule, as our courts do, in an action upon a domestic judgment, where the only thing giving color of jurisdiction over the person is an unauthorized appearance by an attorney. The different rule in the two cases has been supposed to rest on the unreasonable-

ness of compelling a party against whom judgment has been rendered in another state on an unauthorized appearance by an attorney, to go to the foreign jurisdiction to attack it. (See DILLON, J., in *Harshay* v. *Blackman,* 20 Iowa, 161.) The same reason, in justice, would seem to apply in case of domestic judgment against a non-resident of the state, and, besides, it may be said that a non-resident, not served with process and for whom an unauthorized appearance had been entered in the foreign jurisdiction, would be much less likely to become appraised of the pendency of the action than if he had been a resident * * *

"We are bound, under our decisions to follow the doctrine of *Denton* v. *Noyes* in cases where it is strictly applicable. It is as to such cases *stare decisis.* But we are not disposed to extend the doctrine of that case to cases fairly and reasonably distinguishable, and the fact that a defendant, against whom a judgment has been obtained here upon an unauthorized appearance by an attorney, and who was not served, was a non-resident during the pendency of the proceedings, and was not within the jurisdiction, does, we think, constitute such a distinction as renders the rule in that case inapplicable" *(Vilas v Plattsburgh & Montreal R. R. Co.,* 123 NY 440, 455-457, *supra).*

Since the *Vilas* decision *(supra),* there have been a number of rulings by the Court of Appeals and the various Appellate Divisions, including our court, applying the rule of *Vilas* to cases concerning unauthorized appearances by attorneys on behalf of out-of-State residents *(see, e.g., Stock v Mann,* 255 NY 100, 104, *affg* 229 App Div 19 [3d Dept]; *Wichlenski v Wichlenski,* 67 AD2d 944 [2d Dept]; *Ramm v Ramm,* 34 AD2d 667 [2d Dept]; *McKay v Stillman,* 278 App Div 662 [2d Dept]; *Amusement Sec. Corp. v Academy Pictures Distrib. Corp.,* 251 App Div 227). Surprisingly, however, the appellate courts, for the most part, have been silent on the issue of the original *Denton* rule. One significant exception, however, was *Wickham v Liberty Mut. Ins. Co.* (73 AD2d 742, 743, *supra)* in which the Third Department expressly refused to apply the *Denton* rule, stating simply: "Ancient cases which upheld the validity of a judgment entered against an unserved party for whom an unauthorized appearance was made by a *solvent* attorney were premised upon the party's right to sue the attorney making the unauthorized appearance [citing *Brown, Denton* and *Vilas].* These cases have no present-day validity. We fail to see how an attorney's solvency can validate an

otherwise void judgment entered against a person over whom personal jurisdiction was not obtained". Interestingly, the only other appellate case dealing with the question of an unauthorized appearance by an attorney on behalf of a resident of this State which has come to our attention is an earlier case from the Third Department, *General Elec. Credit Corp. v Salamone* (42 AD2d 506). There the court had applied the ancient rule, citing *Brown v Nichols* (42 NY 31, *supra*), to uphold an order vacating a judgment and permitting the defendant to submit an answer in the action. Apparently the defendant there, rather than seeking absolute relief from the judgment on the ground of lack of personal jurisdiction, sought only permission to submit an answer.

Thus, it can be seen then that while the *Denton* rule regarding unauthorized appearances by attorneys was well established during the nineteenth century and may have been accepted as reflecting sound public policy at the time, its application in this century has been very limited. Rather, the more prevalent treatment of the issue of unauthorized appearances by attorneys has not been application of the ancient rule itself, but of the departure from the rule made by the court in *Vilas v Plattsburgh & Montreal R. R. Co.* (123 NY 440, *supra*). In this context, we are prepared to join our colleagues in the Third Department and conclude that, under modern concepts of due process, the *Denton* rule no longer has validity.

The question which must be addressed then in the case at hand is whether the court obtained personal jurisdiction over Frank Coppotelli in a manner consistent with standards of due process. It is axiomatic that absent a waiver of objections to jurisdiction (CPLR 3211 [a] [8]; [e]), a court is without power to render a judgment against a party as to whom there is no personal jurisdiction, and that a judgment rendered in the absence of personal jurisdiction is void as to that party and may be attacked either directly or collaterally (CPLR 5015 [a] [4]; *Royal Zenith Corp. v Continental Ins. Co.*, 63 NY2d 975). In this case, the plaintiff asserted two grounds for upholding personal jurisdiction over Frank Coppotelli, namely, personal delivery of a summons (CPLR 304, 308 [1]) and an appearance by an attorney on his behalf (CPLR 320 [b]; 321 [a]).

Minimum standards of due process require that an assertion of personal jurisdiction over an individual must be predicated upon a proper jurisdictional basis, adequate notice and an opportunity to be heard *(World-Wide Volkswagen Corp. v*

*Woodson,* 444 US 286; *Mullane v Central Hanover Trust Co.,* 339 US 306). In the instant case, there is really no question that a proper basis existed for the assertion of personal jurisdiction over Frank Coppotelli. As a domiciliary of this State, he was amenable to suit in its courts (CPLR 301; *see, Matter of Mary F. B. v David B.,* 112 Misc 2d 475). The jurisdictional flaw in this case is found in the lack of proper notice. Under the CPLR, the general method by which the notice requirement is satisfied is service of process. Personal service of a summons upon a defendant in a civil action serves both to commence the action and to establish jurisdiction of the court over him (CPLR 304). The summons, when served, notifies defendant of the pendency of the action so that he may resist that which is sought of him *(Matter of Bonesteel,* 16 AD2d 324). At bar, as we have already concluded, the plaintiff failed to properly effect personal delivery of the summons upon Frank Coppotelli pursuant to CPLR 308 (1). While jurisdiction over the person may be acquired by service of the summons in a manner other than personal delivery *(see, e.g.,* CPLR 308 [2], [3], [4], [5]), personal delivery of the summons was the method of service selected by the plaintiff and it failed to meet its burden of establishing that such service was effected *(see, Anton v Amato,* 101 AD2d 819, *supra; De Zego v Donald F. Bruhn, P. C.,* 99 AD2d 823, *supra).* It matters not whether, as plaintiff seems to imply, Frank Coppotelli may have become aware of the pendency of the action through his brother or may have otherwise obtained a copy of the summons *(see, Markoff v South Nassau Community Hosp.,* 61 NY2d 283; *McDonald v Ames Supply Co.,* 22 NY2d 111). Due process requires that notice be given in a manner reasonably calculated under all the circumstances to apprise the parties of the pendency of the action and to afford them an opportunity to be heard *(Mullane v Central Hanover Trust Co., supra).* Notice of the suit received by means other than those provided in the CPLR cannot serve to confer jurisdiction over a defendant *(Feinstein v Bergner,* 48 NY2d 234). Thus, the attempt to acquire jurisdiction by service of process in this case did not satisfy due process.

Therefore, we must look to the second ground asserted by the plaintiff as a basis for upholding personal jurisdiction, namely, appearance, and determine whether a finding of personal jurisdiction upon that ground comports with due process. As previously noted, an appearance in an action, without properly preserving an objection to jurisdiction, is the

equivalent of personal service of a summons (CPLR 320 [b]). The reasoning behind this rule is easy to understand. Where a defendant voluntarily chooses to participate in an action brought against him, there is no unfairness in overlooking any deficiency in the plaintiff's attempt to bring him within the court's jurisdiction *(Gager v White,* 53 NY2d 475, 488). Where, however, a defendant chooses to contest the procedures used by the plaintiff to commence that action, the statute permits him to do so, provided he acts promptly (CPLR 320 [b]; 3211 [a] [8]). An individual defendant, if he chooses to do so, may elect to appear by an attorney (CPLR 321 [a]). Under such circumstances, the attorney acts as agent for the defendant. The actions of an attorney as agent, however, are circumscribed by the rules of the law of agency. A principal is bound to a third person by acts of another person when the principal has expressly given the latter authority to act on his behalf; has confirmed unauthorized acts either expressly or impliedly by words or conduct; or has apparently authorized that person to act as his agent, although the person acts either without or in excess of his actual authority (Restatement [Second] of Agency §§ 26, 27; 2 NY Jur 2d, Agency, § 84). In the case at bar, it is clear that the defendant Frank Coppotelli neither expressly nor implicitly conferred authority on the attorney who appeared on his behalf. Thus, in order for Frank to be bound by the acts of the attorney, it must be shown that the plaintiff received some indication from Frank himself that the attorney's acts were authorized. Apparent authority can bind a principal only when there was some misleading conduct on the part of the principal, and actions of the agent alone cannot suffice *(UA-Columbia Cablevision v Fraken Bldrs.,* 96 AD2d 509, *appeal dismissed* 60 NY2d 838). The attorney's appearance, without more, is insufficient to warrant a finding that Frank Coppotelli created the appearance that the attorney was authorized to act on his behalf.

There is no unfairness in finding personal jurisdiction over a defendant who, despite deficiencies in the service of process, has freely chosen to appear in an action and elects to do so by his personal agent *(Gager v White, supra,* at p 488). In this case, however, an entirely different situation is presented. Here, Frank Coppotelli has a legitimate basis for objecting to personal jurisdiction. As we have pointed out, he was never properly served with process and, therefore, the notice requirement of due process was not met. Further, he never voluntarily elected to participate in the action or to forego his

objection to jurisdiction. Nor did he ever select an agent to appear on his behalf to either consent to the jurisdiction of the court or object thereto. In short, up until the time he sought to vacate the judgment entered against him, Frank Coppotelli was a stranger to the litigation.

Due process is founded upon considerations of fair play and substantial justice *(International Shoe Co. v Washington,* 326 US 310). It is clear to us that the *Denton* rule does not meet this standard. In our view, the inherent unfairness in over-looking the jurisdictional defect in this situation cannot be effectively counteracted by the remedies available under the *Denton* rule. While in order "to prevent all possible injury to the defendant, and at the same time, to save the plaintiffs from harm", *Denton* allows a defendant to enter the suit and plead to the merits *(Denton v Noyes,* 6 Johns 296, 301, *supra),* such a remedy is of little benefit to a defendant who does not have a meritorious defense. Nevertheless, even if a party has a defense, as the situation seems to be in the case at bar, the fact remains that where initially the action was commenced without proper jurisdiction over a particular party, any pro-ceedings had in furtherance of the action should be deemed void as to him *(Royal Zenith Corp. v Continental Ins. Co.,* 63 NY2d 975, *supra).*

Nor do we find adequate the other remedy proposed by *Denton* of allowing a defendant to institute an action for damages against the attorney who made the unauthorized appearance *(Denton v Noyes, supra,* at p 301). Such a remedy subjects an innocent party to the burden of instituting a new proceeding against an attorney. Moreover, like our colleagues of the Third Department in *Wickham v Liberty Mut. Ins. Co.* (73 AD2d 742, 743, *supra),* we "fail to see how an attorney's solvency can validate an otherwise void judgment entered against a person over whom personal jurisdiction was not obtained".

In light of what we perceive to be the inadequacy of the remedies available to a defendant who finds himself bound by a judgment in an action in which an attorney made an unauthorized appearance on his behalf, we are obviously not persuaded by the further contention set forth in *Denton* that unauthorized appearances rarely occur and that even when they do "no very serious injury can result" *(Denton v Noyes, supra,* at p 304). The infrequency of occurrence is of little solace to Frank Coppotelli and those like him who find them-selves bound by a judgment entered on an unauthorized

appearance. Furthermore, it is not always the case that the ill effects of an unauthorized appearance are slight. A judgment may subject a party to great financial hardship and, as previously noted, we find the alternative remedies available to such a party to be far from adequate.

Accordingly, we conclude that jurisdiction was not acquired over Frank Coppotelli since he was never served with a summons and did not voluntarily submit to the court's jurisdiction. In light of this fundamental jurisdictional defect, we hold that as against defendant Frank Coppotelli the judgment entered herein, predicated upon jurisdiction based upon an unauthorized appearance, is void and, therefore, the order appealed from, which vacated the judgment as to him, should be affirmed.

GIBBONS, J. P., WEINSTEIN and NIEHOFF, JJ., concur.

Order of the Supreme Court, Nassau County, dated July 17, 1984, affirmed, with costs.