OPINION OF THE COURT
Eric N. Vitaliano, J.
The underlying action is one for a sum certain on an account stated. Plaintiff Citibank, N.A., as successor in interest to European American Bank, claims it provided defendant Robert McGarvey with a sum of money which McGarvey did not repay when demanded. The summons and complaint was filed in this court on May 7, 2002. On August 6, 2002, a clerk’s judgment was entered, without any judicial intervention, in the amount of $5,281.15.
McGarvey now moves by order to show cause to open his default and set aside the judgment entered against him. In addition to denying the merits of Citibank’s claim, McGarvey alleged that he was not served with process. In its opposing papers, Citibank stood on the affidavit of its licensed process server, Michael Ballato, and requested that a traverse hearing be conducted under authority of Anello v Barry (149 AD2d 640 [2d Dept 1989]). On January 16, 2003, the judge presiding in the motion part ordered that a traverse hearing be conducted. That hearing was held before this court on March 17, 2003.
Though not so specifically denominated in his order to show cause, the defendant had essentially styled his papers as a demand for relief from an excusable default under CPLR 5015 (a) (1). By ordering the traverse hearing that would directly put and resolve McGarvey’s contention that he had never been served, and, therefore, that the court had never acquired jurisdiction over him, the defendant’s motion was effectively modified to one seeking relief under CPLR 5015 (a) (4) as well. Since the defendant’s objections under subdivision (a) (4) go to the power of the court to enter a judgment against him, those *294 objections must be resolved before the court considers the defendant’s alternate demand under subdivision (a) (1) that relief from an excusable default should be granted.
At the traverse hearing, the defendant attacked the jurisdictional issue on two grounds. The first was the failure of process. McGarvey claimed that Citibank’s process server was not diligent in his efforts to serve him personally and, in fact, that he had never been served either personally or any other way. The second ground was that the “non-military affidavit” required to be filed prior to the entry of a default judgment under the Federal Soldiers’ and Sailors’ Civil Relief Act of 1940 (50 USC Appendix §§ 501-536), and the New York State Soldiers’ and Sailors’ Civil Relief Act of 1951 (Military Law §§ 300-328), was defective. Though success on either ground would bring McGarvey relief, his challenge to the nonmilitary affidavit filed prior to his default could have broad and grave implications for literally hundreds of nonmilitary affidavits and default judgments which rest upon them in this court alone and likely thousands more among the four other county branches of Civil Court.[1]
The testimony at the hearing kept promise with the sharp conflict about the. facts that was foreshadowed by the initial motion papers. Citibank called its process server, an independent contractor, who testified as to his seven years of experi *295 ence as a licensed process server and the thousands of litigation papers and process that he had served over that period. Citibank offered Ballato’s logbook and affidavit of service, which indicated that he had endeavored to serve the defendant personally or by substituted service on three occasions. On all three occasions — the first on April 24, 2002 at 7:00 a.m., the second on April 26, 2002 at 12:15 p.m. and the last on April 29, 2002 at 7:33 p.m. — service was attempted, according to the process server’s testimony, at the dwelling where the defendant resided with his family. On none of those occasions, the process server testified, did anyone at the McGarvey home answer the door. On the last occasion, Ballato said he affixed the summons and complaint to the door of house number 32 and that very day deposited a copy of the summons and complaint in the United States mail addressed to McGarvey at the very same address where he had affixed the summons and complaint to the door. The process server offered no testimony whatsoever of any other efforts to serve McGarvey, including making any inquiry as to where McGarvey worked so that personal service could be attempted at that location.
On cross-examination, Ballato acknowledged that, while he kept a logbook as required by law and regulation, the entries he made in it were not contemporaneous with his actual attempts at service. It was his practice, he testified, to make the entries in his logbook when he returned home at the end of the day. Effectively, all entries for the day, regardless of the quantity of process or of how many attempts or how many different locations, were made at the same time.
Defendant McGarvey testified next. McGarvey’s testimony confirmed the obvious: as his attorney had already claimed, he swore that he had not been served personally, that he saw no legal papers attached to his door and that he did not receive any process in the mail. He also said that he was not on vacation during the week that the process server said he attempted to serve him. McGarvey also noted that, with two young children, someone would have been at home during some, if not all of the times, that the process server said he had been at the McGarvey home. He testified further that he and his family had lived in the same house for over 10 years.
Having established McGarvey’s long-time residence on the block, his testimony next focused fire on the plaintiff’s nonmilitary affidavit. The nonmilitary affidavit that had been offered by Citibank and received in evidence was based on a conversation the process server claimed to have had on April *296 29, 2002 with a “ ‘Mary’ Matsis,” who, he said, lived at house number 34 on the block where the defendant resided. McGarvey testified that at no time during the years he lived on the block did anyone named “Matsis” live on the block. What’s more, he said, there was no house number 34 on the block at all. That fact was further attested to by a communication from the United States Postal Service, received in evidence without objection as defendant’s exhibit A, that “there is no such numbered dwelling” on the block. When recalled to the stand, the process server could only state in reply that, despite the seeming specificity of the identification of the person named in the nonmilitary affidavit, he could now only recall speaking to a woman and that he was not sure of her name or specific residence address.
Personal Jurisdiction
Obviously, proper in form, the affidavit of Citibank’s process server attesting to his conspicuous service upon the defendant would be sufficient to support a finding of jurisdiction. But, because of the sharp denial by McGarvey, the traverse hearing was ordered. At that hearing, it was the burden of Citibank to establish jurisdiction over McGarvey by a preponderance of the evidence. (See Skyline Agency v Ambrose Coppotelli, Inc., 117 AD2d 135, 139 [2d Dept 1986]; see also Laurenzano v Laurenzano, 222 AD2d 560, 561 [2d Dept 1995].) Additionally, to sustain personal jurisdiction based on conspicuous service pursuant to CPLR 308 (4), the plaintiff must also show that it was duly diligent in seeking to make personal service pursuant to CPLR 308 (1) and (2). (See Gurevitch v Goodman, 269 AD2d 355 [2d Dept 2000].) Citibank failed to meet its burden on either score.
At the traverse hearing, the court had the opportunity to observe the witnesses and weigh the credibility of the evidence presented by both sides. In its totality, the evidence not only does not preponderate in favor of the plaintiff, it, in fact, preponderates in favor of the defendant. There is more than ample reason either to discount or disregard entirely the testimony and documentary proof offered by the process server. The fact that the entries in his log were, according to his own testimony, not contemporaneous with his service attempts permits the inference that the entries were not accurate. The fact that Ballato allegedly spoke to a neighbor at an address both sides agree does not exist and that he referred to the neighbor by a specific name the defendant contends is not the *297 name of anyone residing on his block and which the process server admitted may not be the correct one despite the specificity of his affidavit to the contrary, all strongly support the court’s finding that the proof adduced by Citibank does not meet its burden of establishing by a preponderance of the evidence that it had obtained, as it claimed, personal jurisdiction over McGarvey by nail and mail service under CPLR 308 (4). (See Matter of Adam S., 269 AD2d 453 [2d Dept 2000].)
Furthermore, Citibank fails in its burden of establishing that the process server used due diligence in attempting to serve McGarvey personally. The testimony of the process server was that he made three attempts to serve McGarvey on three weekdays in less than a seven-day period during either normal business hours or during hours when it reasonably could have been expected that McGarvey was in transit to or from work.[2] There is no evidence of any kind that the process server did anything else to accomplish service under CPLR 308 (1) or (2). Specifically, there is no testimony that the process server made any attempt to determine McGarvey’s business address and to effectuate personal service at that location instead of his residence. The failure to take any additional steps to attempt to effectuate personal or substituted service convincingly establishes that the process server failed to attempt service with due diligence and, therefore, even if the court had found that nail and mail service had otherwise been accomplished, such service would still be defective as a matter of law. (See Earle v Valente, 302 AD2d 353 [2d Dept 2003].) Accordingly, the traverse must be sustained. Citibank did not obtain personal jurisdiction over McGarvey.
Nonmilitary Affidavit
In any event, had the court found that process was proper and that Citibank had obtained personal jurisdiction over the defendant, the default judgment entered against the defendant *298 would still be subject to attack on the ground that the nonmilitary affidavit filed in this action was invalid. The Federal and State Soldiers’ and Sailors’ Civil Relief Acts (supra) require that, before a default judgment can be entered against a natural person who has otherwise not answered or appeared in an action or proceeding, the party seeking to enter the default judgment must submit an affidavit to the court showing that the defaulting party is neither in active military service nor dependent on anyone else who is. (50 USC Appendix § 520 [1]; § 536; Military Law § 303 [1]; § 306.) With roots in the storied soil of American military history, the acts are a modern expression of legislative policy dating as far back as the Civil War to protect military service personnel from the entry of judgments against them in civil actions without their knowledge and to insure that those in active military service are able to meet fully the defense needs of America, particularly in times of war. (See Boone v Lightner, 319 US 561, 562 n 2, 569 n 3 [1943]; Andrews v Gardiner, 185 App Div 477, 479 [2d Dept 1918]; Benabi Realty Mgt. Co. v Vandoorne, 190 Misc 2d 37, 38 [Civ Ct, NY County 2001].)
The Soldiers’ and Sailors’ Civil Relief Acts have been, in recent times, considered by some a relic of America’s pre-Cold War past that should be eliminated. (See New York City Hous. Auth. v Smithson, 119 Misc 2d 721, 724 [Civ Ct, NY County 1983].) In the wake of the terrorist attacks of September 11, 2001 and the ongoing hostilities in Iraq with a call up of tens of thousands of Americans to active military duty, the acts have taken on renewed vitality. (See n 1, supra.) But, even if our country and the world had been spared the horror of terrorism and war, the Federal Soldiers’ and Sailors’ Civil Relief Act would still be the law and would be binding on litigants seeking default judgments in this or any other court of record in the United States. Since nonmilitary affidavits are required by federal law in instances like these, the defendant’s challenge must be resolved.
Though in facial compliance with legal/statutory memorandum 109c, the memorandum covering default judgments entered prior to April 30, 2003, the nonmilitary affidavit here, like hundreds of others in this court and likely thousands more citywide, is not in compliance with the Civil Relief Acts. The acts require that a party seeking to enter a default judgment must conduct an investigation as to the military status of the defaulting party and provide an affidavit showing sufficient facts to support the conclusion that the defaulting party is nei *299 ther in the military nor a military dependant. Procedurally, the nonmilitary affidavit must be based on an investigation conducted contemporaneously with the proposed entry of the default judgment. For civil actions like the one at bar, Civil Court legal/statutory memorandum 109c does not disturb the rule of legal/statutory memorandum 109b that “[a]s far as the Clerks are concerned, the Affidavit will be considered timely [under the ‘contemporaneous’ requirement] provided that the investigation was done after service.” Federal law, however, requires more. Under the Civil Relief Act the nonmilitary affidavit must not only be based on an investigation conducted after the commencement of the action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered. {See generally, Annotation, Construction and Application of § 200 of Soldiers’ and Sailors’ Civil Relief Act of 1940, as Amended [50 APP. U.S.C.A. § 520], Relating to Default Judgment against Member of Armed Forces, 35 ALR Fed 649 § 10 [a] [1977]; 77 NY Jur 2d, Military and Civil Defense § 96 [2003].)
Ironically, the leading case nationally, construing the current federal statute as well as the then existing New York State statute,[3] is National Bank of Far Rockaway v Van Tassell (178 Misc 776 [Sup Ct, Queens County 1942]). Interpreting section 520 (1), Judge Froessel held: “It is evident that a default cannot occur until the expiration of the time after the service of process in which a defendant must appear or answer, and any affidavit made prior to such default clearly fails to meet the requirements of the [Act].” (Id. at 778.)[4]
Nonetheless, in complete harmony with common practice in the Civil Court, the investigation as to military status of defendant McGarvey took place on the day the process server claims to have completed his conspicuous service of process by affixing a copy of the summons and complaint to the front door of the *300 McGarvey residence and mailing a copy of that summons and complaint to McGarvey at his residence address. At the time of the investigation, then, the summons and complaint had yet to be filed with the Clerk of the Civil Court and McGarvey’s time to respond had yet to run much less had it expired. He was not then in default and, therefore, the investigation of McGarvey’s military status upon which the nonmilitary affidavit rested was, to be sure, improper under National Bank of Far Rockaway.
Though the bar and the clerks ought to take note of the import of National Bank of Far Rockaway with regard to future applications for default judgment, the invalidity of the nonmilitary affidavit filed on behalf of Citibank here is not necessarily dispositive of the alternate ground advanced by McGarvey to vacate the default judgment entered against him. It does, though, put precisely an issue which has not been resolved by an officially reported New York decision — where a nonmilitary affidavit is invalid as a matter of federal law, is a default judgment entered in an action or proceeding in a New York State court void or merely voidable?
Nationally, the general rule seems to treat the absence of a valid nonmilitary affidavit as a simple irregularity. Default judgments resting on invalid nonmilitary affidavits are deemed merely voidable and not void ab initio as a matter of law. (See, e.g., Snapp v Scott, 196 Okla 658, 167 P2d 870 [1946]; Poccia v Benson, 99 RI 364, 208 A2d 102 [1965]; Hart, Nininger & Campbell Assoc., Inc. v Rogers, 16 Conn App 619, 548 A2d 758 [1988]; Thompson v Lowman, 108 Ohio App 453, 155 NE2d 258 [1958]; Arenstein v Jencks, 179 SW2d 831 [Tex 1944].) Key to the legal analysis undergirding the general rule are the understandings that the only class Congress intended to protect under the 1940 act was active duty military personnel and their dependents and that section 520 (1) of the act still empowered courts to enter default judgments in certain circumstances even in the absence of the nonmilitary affidavit. (See, e.g., Snapp, supra, 196 Okla at 660-661, 167 P2d at 872-873.) In accord with those precedents, even where the nonmilitary affidavit is defective, the Federal Civil Relief Act permits collateral attack and vacatur of a default judgment only upon a showing that the judgment was entered against a party who was on active duty, or dependent upon someone who was, and who could show a meritorious defense to the underlying claim. (See, e.g., Thompson, supra, 108 Ohio App at 455-456, 155 NE2d at 261.) Though claiming a meritorious defense, *301 MeGarvey has made no pretense of being on active military duty or being a military dependent at the time of his default. If the general rule applies, MeGarvey would not be entitled to relief on the alternate theory he asserts in support of vacating the default judgment.
There is a sympathetic argument, to be sure, that the general rule should not apply to default judgments of the type entered against MeGarvey here. Plainly, the Soldiers’ and Sailors’ Civil Relief Act of 1940 establishes an elaborate system to ensure that active duty military personnel are freed from concern about civil litigation matters. Included in that system is the empowerment of courts to appoint an attorney to look after the rights of an absent defendant and to exercise judicial discretion in conditioning the entry of a default judgment. (See 50 USC Appendix § 520 [1].) Implicit in the statutory structure is that there is some sort of intervention by a judge prior to the entry of the judgment on default. This intervention would, thus, assure a review of the type envisioned by subdivision (1) of section 520 prior to the entry of the default and warrant a specific demonstration of entitlement to protection under the act as envisioned by subdivision (4) when seeking an order to vacate such a default. In this action, since it was for a sum certain, there was no intervention, review or order of any judge prior to the entry of the default judgment against MeGarvey. Under our rules, everything was handled by a clerk alone. (CPLR 3215 [a]; CCA 1402.) The act and its interpretation by courts in a multitude of jurisdictions, however, does not appear to admit to such an exception even if such intervention seems implicit.
An anomaly no doubt exists. Where permission of a judge is needed to enter a default judgment because of rule or the refusal of a clerk to do so, the Civil Court in particular has developed a prophylactic to ensure that a nonmilitary affidavit in rigid compliance with the requirements of the Civil Relief Act is in place before a default judgment may be entered. If, however, a clerk enters a default judgment on the basis of a defective nonmilitary affidavit, vacatur under the Civil Relief Act may be had only upon a showing that the defendant was a member of the class to be protected by the act and had a meritorious defense to the claim. Absent such a showing, no matter how irregular the nonmilitary affidavit, the act simply does not afford an independent ground upon which a default judgment can be voided automatically.
That is the case here. Though Citibank’s nonmilitary affidavit is invalid, MeGarvey has made no showing that he was in *302 active military service, or dependent upon someone who was, at the time of his default, as required by seemingly uniform interpretation of the federal statute. But, notwithstanding the unavailing nature of the defendant’s argument on this point, both the clerk and the bar are respectfully invited to consider this decision and order in reviewing nonmilitary affidavits accompanying future applications for default judgment, especially after hostilities in Iraq end. Moreover, LSM 152, and any revived version of legal/statutory memoranda 109b and 109c, should be amended to make plain that, regardless of anything else, a nonmilitary affidavit based on a military status investigation conducted prior to default is invalid. Given the statutory finality of a clerk’s decision, such is required to keep in harmony with the otherwise super-scrupulous review nonmilitary affidavits receive in Civil Court.
On the instant order to show cause, the sum of it is that McGarvey is entitled to relief. Since Citibank never obtained jurisdiction over him, McGarvey’s application to vacate the default judgment entered against him in the underlying action, along with all restraining notices or other proceedings to enforce that judgment, must be, and hereby is, granted and Citibank’s complaint is dismissed without prejudice.

. On April 30, 2003, Civil Court issued legal/statutory memorandum (LSM) 152, which would ameliorate any short run impacts of a finding invalidating the kind of nonmilitary aifidavit used in the matter sub judice. Legal/statutory memoranda are not rules of court but directives to the clerk on how papers filed in the court are to be processed and how actions or proceedings are to be calendared. It would, nonetheless, be pollyanna, for sure, to believe that the bench and bar do not take guidance from them simply because they are “only” directives to the clerk. Therefore, while the new LSM 152, which applies to all defaults to be entered on or after April 30, 2003, does not apply to the default that was previously entered against McGarvey, it is important- to consider it in assessing the impact of a successful challenge by McGarvey. Specifically, in requiring that nonmilitary affidavits in all actions and proceedings, housing and nonhousing alike, be based on an investigation as to military status conducted and an affidavit filed no earlier than 30 days prior to the application for a default judgment, LSM 152 invalidates, for other reasons, the type of nonmilitary affidavit filed by Citibank in this action. McGarvey’s challenge remains significant, though, with respect to future applications because the memorandum makes clear that the new more stringent requirements “will be reviewed upon the cessation of the current [Iraq] situation.” If precedent is followed and the specific time interval guidelines to determine whether a nonmilitary affidavit is “contemporaneous” with the default application are lifted as our nation’s changing military situation dictates, the challenge raised by McGarvey will be again squarely presented.

. The fact that McGarvey testified that he or someone else should have been home during some or all of the times the process server claims to have attempted service at his house is of no moment in passing upon the due diligence of the process server. It is uncontested by the plaintiff that the process server did not successfully make personal or substituted service on any of these occasions. The due diligence requirement puts in issue the reasonableness of the process server’s conduct in light of his acknowledged inability to make such service on those occasions. That the process server may have been similarly unsuccessful had he exercised due diligence and attempted to serve the defendant at his place of business does not excuse his failure to be duly diligent in attempting such service.

. The New York State statute was amended in 1987 to eliminate certain provisions inapposite here that were peculiar to the New York law. Under the current version of New York Military Law, the state provisions are specifically coupled to the existing federal statute and require that, as a matter of New York law, litigants do whatever is required as a matter of federal law as that law has been construed in New York. In pertinent part, the federal law has not changed since its enactment in 1940.

. National Bank of Far Rockaway has not been overruled, notwithstanding Civil Court legal/statutory memoranda 109b and 152 to the contrary. Although warp speed would be required practically to make it a problem, by its terms, LSM 152, like LSM 109b, still permits an investigation to be conducted and a nonmilitary affidavit to be filed prior to default.