OPINION OF THE COURT
Lewis R. Friedman, J.
This case presents for decision an issue which does not appear to have been discussed in any recently reported cases: what constitutes compliance with the Federal Soldiers’ and Sailors’ Civil Relief Act of 1940, as amended (US Code, tit 50, Appendix, §§ 501-591 [the Act]).
In 1940 Congress, as part of the extension of the prewar draft, enacted a complex series of provisions “to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation” (US Code, tit 50, Appendix, § 510). The defense needs of the Nation have varied over the past 43 years; while the details of the Act have changed, its basic provisions remain.
The Act applies to the New York courts, since it applies to “any court of competent jurisdiction of the United States or of any State, whether or not a court of record.” (US Code, tit 50, Appendix, § 511, subd [4].)
New York has not relied solely on the Federal protection, but enacted its own protections for military personnel during the Korean conflict. (Military Law, §§ 300-328, as *722 enacted by L 1951, ch 728.) The changing defense posture of the Nation resulted in a relaxation of the more onerous New York statutory provisions (L 1962, ch 310; cf. L 1981, ch 360) while the Federal statutes’ protections remain at full strength.
The provision in issue here (US Code, tit 50, Appendix, § 520, subd [1]), provides, in pertinent part: “(1) In any action or proceeding commenced in any court, if there shall be a default of any appearance by the defendant, the plaintiff, before entering judgment shall file in the court an affidavit setting forth facts showing that the defendant is not in military service.”
That section is applicable to all proceedings in New York, even though the analogous Military Law provision (§ 303, former subd 1) was repealed. (See 1964 Atty Gen [Inf Opns] 143; 1977 Atty Gen [Inf Opns] 124.) The Act has spawned an industry — the printing, preparing and filing of “non-military” affidavits. It appears to this court, that those documents, based on an alleged “investigation” conducted by someone at petitioner-plaintiff’s counsel’s request are, to a substantial degree false and fraudulent. The affidavits have been criticized by this court, and others, over the years; that criticism need not be repeated here. (See, e.g., Central Budget Corp. v Knox, 62 Misc 2d 66, 67: The false affidavits were “a scandal”; “[t]his is more than a problem”; “[i]t may also constitute contempt of court.” See, also, Matter of Holstein, 43 AD2d 9.)
The problem presented by this case and hundreds of others which were presented to this court during a recent one-week assignment to Part 49, the landlord-tenant calendar part which has responsibility for entering default judgments, is: what is the required content of the “nonmilitary” affidavit. The statute seems clear on its face, yet the documents submitted in support of requests for default judgments of eviction were so inadequate that 334 requested default judgments were rejected. That number represents approximately 38% of all the applications for default judgments submitted to the court during that week.
According to the plain language of the Federal law, the “non-military” affidavit must establish the following fac *723 tors: (1) the respondent is not in the military service of either the United States or an ally; (2) the investigation was done after the default occurred; (3) the investigation was performed shortly before it was submitted; (4) the facts are put forth in a manner sufficient for the court’s evaluation. Those simple requirements have been mandatory since 1940. In National Bank of Far Rockaway v Van Tassell (178 Misc 776), the only reported case describing the requirements, then Justice Froessel held that the investigation must speak from the time of the default, not the service of the summons and must show a substantial effort to determine the facts.
The “non-military” affidavits which the court has rejected failed the statutes’ simple tests for the following reasons: (1) the affidavit is based on an investigation conducted months before the service of the petition (often the affidavits appeared to be copies of affidavits used in prior cases); (2) the affidavit describes an investigation conducted on the date of service of the petition (since almost every petition was served by “conspicuous” service, RPAPL 735, subd 1, one can reasonably question the validity of either the affidavit of service or the “nonmilitary” affidavit, which is typically based on conversations with the respondent or a family member, or both affidavits, see Leader House Assoc. v Reyes, NYLJ, Feb. 16, 1983, p 13, col 3); (3) the investigation was done months before it was submitted in support of the default judgment; (4) the investigation is based on “the tenant file” which is not described as to contents or age of the information; (5) the investigator saw that the respondent, or a “John Doe” who answered the door, was not in uniform (that “investigation” was rejected 40 years ago in National Bank of Far Rockaway v Van Tassell, supra, when many more people were in military service).
In order to determine the cáuse for this wholesale avoidance of the governing Federal law, and the scope of the problems, this court attempted to ascertain the standards used by the clerks of Civil Court and of the Supreme Court in New York City in evaluating “non-military” affidavits submitted, in support of default judgments. The telephone poll of the clerks yielded a shocking result. There is no *724 uniformity in this city — indeed in the Civil Court the landlord-tenant warrant clerk often has an approach different from that of the judgment clerk in the same county. For example warrant clerks find investigations made prior to service of the petition acceptable in New York, Queens and Staten Island. The Civil Court and Supreme Court judgment clerks in all counties reject investigations conducted prior to the summons. Investigations conducted with the service of the petition are inadequate in The Bronx but are accepted by the warrant clerks everywhere else. Investigations after the default are required in the Bronx and Kings counties. This confusion is compounded since there is no uniformity as to the staleness of an investigation which will be permitted: 30 days, Kings Supreme Court; 40 to 50 days, Kings and New York Civil Court; 8 to 9 months, Queens Civil Court; one year, The Bronx and Staten Island, Supreme and Civil Courts, and Queens Supreme Court. The confusion is rampant.
This court is now making it clear that “non-military” affidavits involving the period prior to default, such as in the case at bar, older than 30 to 60 days before submission, or based on facts that do not provide an articulable basis for their conclusion will be rejected. Obviously perjured affidavits will not be tolerated and will form the basis for a referral to a prosecutor for a contempt proceeding. This opinion is being published so that practitioners and the “investigators” they employ will be aware of the standards required by this court and so that those whose requests for default judgments were rejected will have a more detailed description of the defects than is provided by the indorsements on the file.
This court understands that the Federal statute has been criticized by many practitioners for being an unnecessary relic of the military involvements of yesteryear. There is no excuse for perjury, prevarication and avoidance of a statute’s unmistakable requirements, even if they appear to be unwieldy and burdensome. Tenants cannot be expected to respect the law, when landlords so flagrantly flaunt it.
Application denied with leave to renew on a proper “nonmilitary” affidavit.