*40 OPINION OF THE COURT
Ira Gammerman, J.
In this CPLR article 78 proceeding petitioner seeks a judgment directing Carol Arber, a Judge of the Civil Court of the City of New York, to enter a judgment of possession in favor of petitioner in a summary nonpayment proceeding, Park Holding Co. v Pinkerton, pending in that court. Petitioner also seeks a judgment declaring that Judge Arber had no authority in law to schedule an inquest in that summary proceeding.
According to the petition, petitioner instituted a summary nonpayment proceeding against respondent Pinkerton on June 2, 1989 by conspicuous place service made on May 31, 1989, the Civil Court petition alleging ijonpayment of three months’ rent. Mr. Pinkerton did not appear and answer and, thus, petitioner requested a warrant of eviction on July 3, 1989, presumably from the landlord and tenant clerk of the Civil Court. The petition alleges, on information and belief, that the warrant request was presented to Judge Arber during the week of July 3, 1989. This allegation is inaccurate. Judge Arber was presiding in a Trial Part that week, attended a judicial seminar in Rochester, New York, the following week, and it was not until the week of July 17, 1989 when she was presiding in Part 18, the Landlord and Tenant Calendar Part, that petitioner’s request for a warrant was presented to her.
The petition further alleges that petitioner’s attorney was advised on August 4, 1989 that Judge Arber was processing its warrant request and on August 9, 1989 was notified of an inquest scheduled for September 11, 1989. It is apparently this delay, which precludes the entry of a judgment until sometime after September 11, 1989, that prompted petitioner to seek relief from this court.
Although the petition states: "said inquest policy is not being challenged here”, the petition alleges that the scheduling of an inquest "violates the mandate of RPAPL Sec. 732.” Further, the supporting affirmation of petitioner’s attorney claims that Judge Arber was "without any legal basis [in requiring] an inquest as a prerequisite for the landlord obtaining entry of a final judgment of possession and issuance of the warrant where the tenants have failed to appear and/or answered the non-payment proceeding.” Also the petition seeks a judgment directing Judge Arber to enter a judgment for petitioner in the nonpayment proceeding, presumably irrespective of the proof or nonproof elicited at the inquest.
*41 On oral argument on August 24, 1989 the attorney representing Judge Arber sought dismissal of the petition on the grounds that the court did not have in personam jurisdiction over Judge Arber and, further, that Judge Arber’s actions or inactions did not give rise to a writ on behalf of petitioner to mandamus and/or prohibition. Respondent Baer defaulted and respondent Pinkerton appeared pro se. Dismissal was denied for the reasons indicated on the record. Thus, it becomes necessary to determine initially if Judge Arber had authority to schedule the inquest.
Petitioner apparently maintains that RPAPL 732 (3) requires a Judge, presumably without even examining the papers submitted, to perform a mere ministerial act, and enter judgment for the petitioner landlord in those cases in which the respondent tenant defaults in answering.
An examination of the procedure followed in residential summary proceedings is necessary. Judges sitting in the Civil Court of the City of New York preside over two basic types of residential eviction proceedings: nonpayment proceedings pursuant to RPAPL 711 (2) and holdover proceedings pursuant to RPAPL 711 (1) or 713. Both proceedings are started by a petition and notice of petition. In holdover proceedings, "the notice of petition shall specify the time and place of the hearing on the petition”. (RPAPL 731 [2].) Thus, in holdover proceedings the return date is specified in the notice of petition and the proceeding is placed on the calendar whether or not the tenant answers. If the tenant does not answer or respond at the calendar call the matter is set down for an inquest at which the petitioner must establish a prima facie case to obtain a default judgment.
For a nonpayment proceeding to be placed on the calendar, the tenant must answer. The clerk then, pursuant to RPAPL 732 (2), fixes a date for trial not less than 3 nor more than 8 days after joinder of issue. If the tenant does not answer, as here, the attorney for petitioner may request a judgment and warrant on default. Inasmuch as a nonpayment proceeding (as well as a holdover proceeding) seeks a judgment for the possession of real property, the judgment must be entered by a Judge, not a clerk. Nonpayment proceedings may also seek money judgments on default. But, as is the case here, where jurisdiction was obtained by conspicuous place service pursuant to RPAPL 735, only a possessory judgment may be obtained on default.
*42 This difference in the procedure followed in holdover and nonpayment proceedings led to the erroneous practice of inquests only being scheduled in holdover proceedings. Indeed, in the past, many Civil Court Judges signed judgments on default in nonpayment proceedings without ever examining the papers submitted by the petitioner.[1] This practice led to the entry of judgments and the issuance of warrants in many cases in which service was not properly made, in which the petition or notice was defective and in which the nonmilitary affidavit was fraudulent, etc.[2]
Because of these abuses, approximately 10 years ago a number of Civil Court Judges began scheduling inquests in nonpayment proceedings where the tenant had defaulted. It is this practice that petitioner here claims to be without legal authority.
Petitioner incorrectly argues that RPAPL 732 (3) which provides that if "the respondent fails to answer within five days from the date of service * * * the judge shall render judgment in favor of the petitioner” mandates that the judgment on default must be granted without more. Petitioner, however, ignores the provisions of CPLR 3215 which are applicable to proceedings in the Civil Court. (CCA 1402.) The entry of a judgment as a mere ministerial duty is permitted by CPLR 3215 (a) only if the claim is for a sum certain or for a sum which can by computation be made certain. However where the claim is not for a sum certain, application must be *43 made to the court for judgment. CPLR 3215 (b) sets forth the procedure before the court. This section provides, in part, that the court "may make an assessment or take an account or proof, or may direct a reference.” The section requires that the court do more than merely transfer the ministerial act of signing the judgment from the clerk to itself. (Cf., Reynolds Sec. v Underwriters Bank & Trust Co., 44 NY2d 568 [1978].)
Since both RPAPL 732 (3) and CPLR 3215 (b) apply to proceedings in the Civil Court, when a tenant defaults, they should be interpreted together and in a manner in which they are consistent. The interplay and relationship between RPAPL 732 (3) and CPLR 3215 (b) has not been previously examined.[3] The two sections are not inconsistent. RPAPL 732 (3) requires the Judge to render a judgment, not merely enter one. The rendering of a judgment is not a mere ministerial act which can be performed by a clerk. It is a judicial process which should be performed in accordance with CPLR 3215 (b).
Had the Legislature intended that final judgments of possession on default be granted without inquest by a mere ministerial act, it could have specified that such judgments could be granted and entered by the clerk and that application to a Judge for the rendering of a judgment was not necessary. This the Legislature did not do. Certainly it would not be appropriate to burden already overworked Judges with ministerial duties which could be accomplished by clerks. It was obviously intended by the Legislature that the Judges of the Civil Court exercise a judicial role in determining whether to grant possession on default.
*44 An examination of the petition in the underlying landlord-tenant proceeding reveals that it was verified not by the petitioner but by Robert J. Margulies, a member of the firm representing petitioner. This is, apparently, a common practice. All of the allegations in the petition are alleged to be on information and belief and, according to the verification, the grounds of that belief are: "statements and/or records provided by petitioner, its agents and/its employees and contained in the file in the attorney’s office.” The Appellate Division, First Department, in Joosten v Gale (129 AD2d 531 [1st Dept 1987]) has held that a pleading verified by an attorney not on his or her personal knowledge cannot be the basis of a default judgment. Joosten was an action on a promissory note for a sum certain. In the underlying summary proceeding here, the relief sought is possession of an apartment. It need not be labored that if a complaint (or petition) verified by an attorney without personal knowledge cannot be the basis of a default judgment for a sum certain it cannot be the sole basis for a default judgment in a possessory action.
Thus, Judge Arber in scheduling an inquest in the underlying summary proceeding was acting in compliance with CPLR 3215 and in no way violated the mandate of RPAPL 732.
The petitioner, however, is entitled to some relief. Certainly, a request for a judgment and warrant filed on July 3, 1989 should have been submitted to the appropriate Judge prior to the week of July 17, 1989. It was, indeed, infelicitous scheduling for Judge Arber to be assigned to both Part 18 (Landlord and Tenant Calendar Part) and to Small Claims Court at night for the week of July 17. It would not have been possible to schedule an inquest in the underlying nonpayment proceeding for the following week of July 24 inasmuch as the respondent could not have been given appropriate and timely notice. The earliest the inquest could have been held, therefore, was the week of July 31. Unfortunately, Judge Arber was scheduled to be on vacation that week. The following week, the week of August 7, she was assigned again to Small Claims Court at night. It would not have been reasonable to expect her to work both night and day and conduct inquests during the day during that week while sitting in Small Claims Court at night. The following week, the week of August 14, Judge Arber was assigned to a backup Trial Part, Part 54 for the trial of nonjury commercial landlord-tenant matters. There is no explanation offered as to why Judge Arber did not schedule *45 this and any other inquests she had directed for that week, particularly since as she was scheduled to start vacation the week of August 21.
Obviously, the purpose of the summary proceeding procedure is frustrated when dispositions of those proceedings are delayed needlessly. The responsibility for the delay here is initially with the nonjudicial personnel in not transmitting the papers in the underlying summary proceeding to a Judge for prompt action. Subsequent delay was caused by the unfortunate scheduling of the Judge to whom the matter was submitted and her failure to schedule the inquest for the first available week, the week of August 14.
The petition is granted, therefore, to the extent of directing the Clerk of the Civil Court, respondent Baer, to place the underlying nonpayment proceeding, Park Holding Co. v Pinkerton (L&T index No. 077904/89), on the Part 18 Calendar for August 29, 1989 for the purpose of conducting an inquest.

. This practice was perhaps based on the erroneous view that conducting inquests in nonpayment summary proceedings would place an intolerable burden on the court. In fact, the opposite is true. Only a small percentage, approximately 15%, of those inquests scheduled when a respondent defaults in a nonpayment proceeding actually result in a hearing. The vast majority of the other approximate 85% of the cases are either discontinued (because the tenant has paid the rent) or settled. The signing of a default judgment without conducting an inquest, in many cases, results in the respondent seeking an order to show cause to stay the eviction and to vacate the default judgment. Indeed, a substantial portion of the residential Landlord-Tenant Calendar each day in Part 18 is made up of these orders to show cause. An analysis of 81 orders to show cause recently obtained reveals that 78 orders or 96% sought to vacate judgments entered by Judges rendering default judgments without inquests in nonpayment proceedings while only 3 orders or 4% were seeking to vacate judgments rendered after inquest.

. See S.P.S.G., Inc. v Collado, 113 Misc 2d 167 (Civ Ct, NY County 1982); Leader House Assocs. v Reyes, NYLJ, Feb. 16, 1983, at 13, col 3 (Civ Ct, NY County); Mountbatten Equities v Metheny, NYLJ, Apr. 27, 1983, at 13, col 3 (Civ Ct, NY County); New York City Hous. Auth. v Smithson, 119 Misc 2d 721.

. In a number of cases the Appellate Term, First Department, directed the entry of judgment without inquest in nonpayment proceedings pursuant to CPLR 5704 (b). The court, however, never explained its rationale. In a brief submitted to the Court of Appeals in MFY Legal Servs. v Dudley (67 NY2d 706), counsel for the Appellate Term stated that that court has affirmed "the Civil Court’s order directing an inquest where no invalid reason was stated”, citing cases in which the Civil Court Judge ordering the inquest stated no reasons at all (hence no invalid reasons). CPLR 5704 (b), however, is not the appropriate vehicle for review of an order directing an inquest in a summary nonpayment proceeding. That section applies only in two circumstances: (1) when an order is granted to one party without notice to the adverse party and that adverse party seeks review to vacate or modify that order; or (2) when a party applies for an ex parte order, fails to obtain it and seeks review of that denial. CPLR 5704 (b) does not empower the Appellate Term to grant relief in the nature of a final judgment where notice was given on the application for that final judgment when the summary proceeding was instituted. The appropriate remedy available to the petitioner is to make application, as the petitioner has done here, for the CPLR article 78 review.